[Crim. No. 970. Third Appellate District.—May 6, 1927.]

THE PEOPLE, Respondent, v. MAMIE EVELYN SANDERS, Appellant.

[1] CRIMINAL LAW—FORGERY—CHECKS—FAILURE TO CHARGE FORGERY OF NAME OF PAYEE—SUFFICIENCY OF INDICTMENT.—In a prosecution for forgery of a check, an indictment charging defendant with forging the name of the maker thereof, without charging that the name of another person as the payee also was forged, alleged facts sufficient to constitute an offense under section 470 of the Penal Code.

[2] ID.—EVIDENCE—COERCION—REBUTTAL TESTIMONY.—In such prosecution, where defendant claimed that she acted under coercion

and that a co-defendant told her he would break her neck if she did not sign the check, and added, "I know that it was a mistake on my part to do it," and the court ordered the last part stricken out, the court's order struck out only the quoted statement, and an objection to the court's action in thereafter admitting testimony to show that accused was not acting in fear was without merit.

[3] ID.—COERCION AS A DEFENSE—PRESENT PERIL—EVIDENCE.—In such prosecution, where defendant claimed that she acted under coercion of a co-defendant, evidence that some time after signing the check her co-defendant struck her a heavy blow on the face, breaking her jaw, was properly excluded, since coercion to be a defense must be a present, active, and imminent peril, and whatever takes place after the commission of the offense is immaterial.

[4] ID.—ADMISSIONS—OTHER FORGERIES—EVIDENCE—ABSENCE OF MISCARRIAGE OF JUSTICE.—In such prosecution, admission in evidence of two forged checks in addition to the one on which defendant was being prosecuted, where the court limited the testimony to the question of intent, did not result in a miscarriage of justice, under section 4½ of article VI of the constitution, where the forgery was admitted and defendant relied on other defenses.

[5] ID.—INSTRUCTION — DURESS — THREATS.—In such prosecution, an instruction that in order for duress or fear produced by threats to constitute a valid excuse for doing something otherwise criminal, the act must have been done under such threats or menaces as show that the life of the person threatened or menaced was in danger, or that there was reasonable cause to believe and actual belief that there was such danger of present and immediate violence at the time of the commission of the forbidden act, was a correct statement of the law.

[6] ID.—SERIES OF INSTRUCTIONS ON DEFENSE OF INSANITY—ABSENCE OF ERROR.—In such prosecution, where defendant claimed insanity as a defense, the mere giving of several instructions on the subject of insanity did not constitute reversible error, where all of the instructions taken singly were correct.

---

(1) 26 C. J., p. 932, n. 82.   (2) 16 C. J., p. 867, n. 25.   (3) 16 C. J., p. 91, n. 70, p. 543, n. 34.   (4) 17 C. J., p. 317, n. 10, p. 368, n. 5.   (6) 16 C. J., p. 1036, n. 58.

3. Coercion as defense to crime, notes, 109 **Am. St. Rep.** 721; 19 **L. R. A.** 357. See, also, 7 Cal. Jur. 861; 8 R. C. L. 125.

4. Proof of other forgeries in prosecution for forgery, notes, 9 **Ann. Cas.** 456; **Ann. Cas.** 1912C, 91; 43 **L. R. A. (N. S.)** 750. See, also, 12 Cal. Jur. 664; 12 R. C. L. 166. Admission of evidence of other offenses to show intent, notes, 105 **Am. St. Rep.** 991; 62 **L. R. A.** 214. See, also, 8 Cal. Jur. 63; 8 R. C. L. 202.

APPEAL from a judgment of the Superior Court of Sutter County and from an order denying a new trial. K. S. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

Arthur M. Bundy and Ray Manwell for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was convicted of the crime of forgery upon an indictment charging that jointly with James Cosgrove and Charles Lovett, on or about the twenty-second day of November, 1926, she wilfully, unlawfully, etc., with intent to defraud one D. B. Curry, did make and execute as true and genuine a certain check and instrument of writing, in the following words and figures, to wit:

"Marysville, Cal. Nov. 22, 1926.          No. 15.
"Decker-Jewett Bank, 90–231
"Pay to the order of W. D. Lovett, $17.50, Seventeen Fifty Dollars.
"D. B. Curry."

Her motion for a new trial being denied, the defendant appeals therefrom and from the judgment of conviction.

Three grounds for reversal are alleged: 1. That the indictment does not set forth facts sufficient to constitute a public offense; 2. That the court erred in ruling upon the admission of testimony; and 3. That the court erred in its instructions to the jury.

[1] The first allegation of error is based upon the fact that the indictment does not charge that the name of W. D. Lovett was fraudulently or otherwise forged or indorsed upon said check and that, therefore, it fails to allege facts sufficient to constitute an offense. In support of this contention two cases are relied upon by the appellant: *People v. Cole,* 130 Cal. 13 [62 Pac. 274], and *People v. Thornburgh,* 4 Cal. App. 38 [87 Pac. 234]. These cases, however, are readily distinguishable from the case at bar. In the Cole case it was held that in order to constitute the crime of forgery it is essential that there should be the making of a

writing which falsely purports to be the writing of another, and, therefore, that a check in the following form:

> "Sacramento, Cal. Aug. 31, 1899.
> "National Bank of D. O. Mills & Co.
> "Pay to E. J. Cole or order, Ten ($10.00) Dollars.
> " ' (Signed) E. J. COLE.' "

(Indorsed on back.)    "S. B. SMITH."

did not set forth sufficient facts to constitute the crime of forgery, in that the check was drawn payable to the person who purported to be the maker of the check, and who actually was the maker of the check. Upon the trial it was claimed that the indorsement of S. B. Smith was forged, but the information in that case did not charge the forgery of the indorsement and, consequently, the information was not supported by any allegation showing such forgery. The check did not purport to be the writing of any other person than E. J. Cole, that is, it was the check of the person who wrote and signed the same.

In the case of *People* v. *Thornburgh, supra,* following the Cole case, it was held that a check payable to the order of the maker without charging the forgery of the indorsement thereon, failed to set forth sufficient facts to establish the crime of forgery. These cases differ in their facts from the case at bar, in that the defendant in the instant case is charged with forging the name of D. B. Curry as the maker of the check, thus bringing the offense clearly within the terms of section 470 of the Penal Code, which reads: "Every person who, with intent to defraud, signs the name of another person, or of a fictitious person, knowing that he has no authority so to do, to, or falsely makes, alters, forges, or counterfeits, any charter, . . . bank bill or note, postnote, check, etc., is guilty of forgery." The name of D. B. Curry is alleged to have been forged and signed to the check as the maker, which sufficiently constitutes the offense of forgery.

The making of the fraudulent check and the forging of the name of D. B. Curry by the defendant appears to have been admitted. The defense was insanity and coercion, insanity induced by prolonged state of inebriety or drunkenness, and coercion exercised by a co-defendant. The facts of the case are substantially as follows:

The defendant, Mamie Evelyn Sanders, obtained permission of W. D. Lovett to take his automobile on or about Saturday evening, November 21, 1926, at the town of Roseville for the purpose of taking a drive to Marysville, and had her co-defendant, Charles Lovett, a boy of sixteen, a son of W. D. Lovett, to accompany her for the purpose of driving the machine. The defendant Sanders and the boy Lovett then drove to a place in Roseville, not indicated in the testimony, and there found the defendant Cosgrove. After picking up Cosgrove, the three left Roseville, proceeding in the direction of Marysville. It appears that they spent the entire night in the automobile; that during the night, the defendants Sanders and Cosgrove indulged in the use of intoxicating liquor; that shortly before daylight on Sunday morning of November 22d, they reached the residence of D. B. Curry, near Pleasant Grove, in the county of Sutter, where they stopped for a short period of time. The defendant Sanders alighted from the automobile, leaving the defendants Cosgrove and Lovett in the machine, and went into the residence occupied by D. B. Curry, and while there obtained three blank checks and also the signature of D. B. Curry from a canceled check, theretofore executed and signed by the defendant Curry. The defendant also obtained from D. B. Curry the sum of $20. After obtaining the money she returned to the automobile occupied by the other defendants and, according to the testimony of the defendant Charles Lovett, James Cosgrove and the defendant Sanders proceeded to fill out the three blank checks which the defendant Sanders had obtained from the residence of D. B. Curry and the defendant Sanders signed the name of D. B. Curry to said checks, one of the checks being the check heretofore referred to and copied in this opinion. After leaving the residence of D. B. Curry, the three proceeded to an oil station near Pleasant Grove, where the defendant Lovett attempted to pass the check involved in this case, but failed to obtain any money thereon. The three then went to a village called Trowbridge, in Sutter County, where the defendant Lovett succeeded in passing the check involved in this case and obtained from Starkweather and Pritchard, storekeepers, the sum of $17.50. The other checks referred to were made out and passed upon other people,

and were admitted in evidence for the purpose of showing guilty intent, etc. The drinking orgy appears to have continued until some time late Sunday evening, November 22d, when the party reached Sacramento on the return trip from Marysville, where they remained overnight.

[2] Admitting the signing of the checks, the defendant, Mamie Evelyn Sanders, urged as a defense, as hereinabove stated, insanity and coercion, that the coercion consisted in force and threats exercised by the defendant Cosgrove. In this particular the testimony of the defendant was to the effect that she had signed the checks through fear. After so testifying, the defendant was asked the following question: "Q. At the time that you signed those checks what did Jimmy Cosgrove say to you? A. Jimmie Cosgrove was abusing me and calling me a chippy, and he said that he ought to break my God damn neck, and he would if I didn't sign the checks. I know that it was a mistake on my part to do it. Mr. Coats: I ask that the last part be stricken out. The Court: That last part will be stricken out." Appellant assigns this ruling of the court as error, and in so doing makes the mistake of assuming that the order of the court struck out the entire answer, but, as we read it, the last part relates only to the last sentence, which is: "I know that it was a mistake on my part to do it." That is the only portion which we think was stricken out by the order. It left the defendant the full benefit of whatever her testimony was worth, so that the objection to the action of the court in thereafter admitting testimony to show that the appellant Sanders was not acting in fear of Cosgrove is without any merit.

[3] The appellant then sought to introduce testimony to the effect that some time after the signing of the forged check, upon which this prosecution is had, the defendant Cosgrove struck the appellant a heavy blow upon the face, breaking her jaw. This testimony was not admitted and the ruling of the court thereon is assigned as error. Coercion to be a defense must be a present, active, and imminent peril. Whatever takes place after the commission of the offense is wholly immaterial. Hence, any abuse which the appellant may have suffered at the hands of her co-defendant, Cosgrove, after the commission of the offense for which she was convicted, would not in anywise lessen or excuse

the commission of the crime with which she stands charged. The rule is thus succinctly set forth in 16 C. J. 91, section 59: "The compulsion which will excuse a criminal act, however, must be present, imminent, and impending, and of such a nature as to induce a well grounded apprehension of death or serious bodily harm if the act is not done. A threat of future injury is not enough. Such compulsion must have arisen without the negligence or fault of the person who insists upon it as a defense." To this statement of the law is appended a long list of authorities.

The facts which we have recited, taken from the transcript, show that the appellant obtained the checks, three in number, signed all of them, and that the one upon which prosecution is had was passed before any acts indicating bodily harm appeared to have taken place. All these matters were circumstances to be taken into consideration by the jury. The obtaining of the automobile, the planning of the trip, the securing of the checks, the forging of the name of D. B. Curry, and their subsequent passage to obtain money; from which we do not very well see how a jury could have come to any conclusion that the defendant participated in the forging of the check upon which she is being prosecuted without any negligence on her part. The facts set forth certainly indicate that the jury might very well conclude that the appellant was the prime mover in the drunken, criminal carousal terminating in forging checks, as claimed by the prosecution.

[4] It is also argued by the appellant that the court erred in admitting in evidence two forged checks in addition to the one on which the appellant was being prosecuted. We do not need to consider this allegation of error further than to state that while the offer of the district attorney was not a proper one, the court, in its ruling, limited the testimony to the question of intent, but, whether this was or was not correct, there has been no miscarriage of justice and section 4½ of article VI of the constitution applies. The forgery being admitted, there was nothing left for the jury to pass upon except the alleged defense of coercion and insanity and everything that the defendant did at that time was admissible, in order that the jury might determine the merit or want of merit in either of the alleged defenses.

[5]   The court instructed the jury upon the subject of coercion as follows: ''The Court instructs you, that a person who commits an act under threats or menaces sufficient to show that he had reasonable cause to believe and did believe that his life would be endangered if he refused, is incapable of committing a crime.

''In order for duress or fear produced by threats or menace to be a valid, legal excuse for doing anything, which otherwise would be criminal, the act must have been done under such threats or menaces as show that the life of the person threatened or menaced was in danger, or that there was reasonable cause to believe and actual belief that there was such danger.   The danger must not be one of future violence, but of present and immediate violence at the time of the commission of the forbidden act.   The danger of death at some future time in the absence of danger of death at the time of the commission of the offense will not excuse. A person who aids and assists in the commission of the crime, or who commits a crime, is not relieved from criminality on account of fears excited by threats or menaces unless the danger be to life, nor unless that danger be present and immediate.''

This instruction we think clearly sets forth the law.

[6]   It is finally argued that the court erred in its instructions to the jury on the subject of insanity.   We find no assignment of error specifically directed against the instructions given by the trial court on the subject of insanity. However, in appellant's brief upon this subject occurs the following paragraph:

''While we think that any one of these instructions, if taken alone, properly states the law, yet, we also think that the court in its numerous instructions on this plea laid too much stress upon it and that its repeated cautions to the jury could not but have the effect of instilling in the minds of the jurors, a suspicion that the court thought the plea was spurious and that they would not be justified in bringing in a verdict of 'not guilty' upon the defense of insanity. It will be noted that the court's instructions on this defense requires seven pages for transcription.''

We have read all the instructions given by the trial court on the subject of insanity and we agree with appellant's counsel that not one of them taken alone is erroneous, but

we cannot agree with counsel for appellant that the mere giving of several instructions, all of which are correct, constitutes reversible error. If all of the instructions taken singly are correct, it cannot logically follow that they are erroneous when taken as a whole. Instructions on the subject of insanity are necessarily somewhat longer than those usually given upon other subjects, but this lays no predicate for assignment of error. It would serve no useful purpose to set forth the instructions on the subject of insanity given in this case, and we will content ourselves with simply stating that a careful reading thereof shows that they are only the instructions which have been approved time without number, where the defense of insanity has been interposed.

Upon the hearing of this cause on appeal it was suggested by the attorney-general that this court has no jurisdiction by reason of a failure of the appellant to comply with the provisions of section 1247 of the Penal Code. There appears to be considerable merit in this contention, but as there appears to be no merit in the appeal, it does not seem necessary to prolong this opinion by a consideration thereof. A judgment of dismissal or affirmance will accomplish the same results. It is therefore ordered that the judgment and order appealed from be and the same are hereby affirmed.

Thompson, J., *pro tem.,* and Finch, P. J., concurred.