608 P.2d 41

**STATE of Arizona, Appellee,**

v.

**Max Anderson DUNLAP, Appellant.**

No. 4128.

Supreme Court of ·Arizona,
In Banc.

Feb. 25, 1980.

Rehearing Denied March 18, 1980.

John A. LaSota, Jr., Former Atty. Gen., Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., Galen H. Wilkes, Asst. Atty. Gen., Phoenix, for appellee.

Jordan Green, Debus & Busby by Larry L. Debus, Murray Miller, Phoenix, for appellant.

GORDON, Justice:

Defendant Max Anderson Dunlap appeals his convictions and sentences for first degree murder and first degree conspiracy. Having jurisdiction pursuant to A.R.S. § 13–4031, we reverse the judgments and sentences of the Superior Court.

On June 2, 1976, a bomb exploded in a car owned and occupied by Phoenix investigative reporter Don Bolles, which resulted in his death eleven days later. Bolles, still conscious and lucid at the scene of the explosion, told bystanders that John Harvey Adamson was involved in the bombing. Adamson was subsequently charged with Bolles' murder. As a result of a plea agreement with the State of Arizona, Adamson agreed to testify on behalf of the state against Dunlap and James Albert Robison who were then charged with murder and conspiracy.

Dunlap was jointly tried with Robison. At trial, Adamson testified that Dunlap had hired him to murder three people, Don Bolles, Al Lizanetz and Bruce Babbitt, then Attorney General, because all three were troublesome to Dunlap's friend and mentor, Kemper Marley. Bolles was selected as the first victim. Adamson further testified that Robison had agreed to assist him in the murder and had detonated the bomb with a remote control device after Adamson had placed the bomb under Bolles' car.

Both Dunlap and Robison were convicted and sentenced to a 29–30 year prison term on the conspiracy count and to death in the gas chamber on the murder count. In separate appeals, Dunlap and Robison challenge their convictions and sentences on a number of grounds. We find one of the issues raised by Dunlap dispositive of his appeal.

Adamson was the state's principal witness against the defendant, and his testimony was central to the state's case. He was cross-examined extensively by defense counsel. During cross-examination, the court sustained certain state objections, and

Adamson invoked his Fifth Amendment right against self-incrimination several times. These limitations on cross-examination prompted the defendant to claim a violation of the confrontation right afforded by the Sixth and Fourteenth Amendments. Moreover, he moved that Adamson's direct testimony be stricken, because of his refusal to fully respond to cross-examination. This motion was denied, and Dunlap renews this challenge on appeal.

The Sixth Amendment right of an accused to confront the witnesses against him is a fundamental right made obligatory on the states by the Fourteenth Amendment. *Pointer v. State of Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). A primary interest secured by the clause is the right of cross-examination. *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Although the trial court has discretion in deciding questions of the scope of cross-examination, the policy in this state has always been to allow a broad scope of cross-examination in order to comport with the confrontation right. *State v. Morales*, 120 Ariz. 517, 587 P.2d 236 (1978); *State v. Ramos*, 108 Ariz. 36, 492 P.2d 697 (1972); *State v. Holden*, 88 Ariz. 43, 352 P.2d 705 (1960). Since the right is guaranteed by the Constitution, a conviction will be reversed if cross-examination has been unreasonably limited. *United States v. Norman*, 402 F.2d 73 (9th Cir. 1968), *cert. denied*, 397 U.S. 938, 90 S.Ct. 949, 25 L.Ed.2d 119 (1970). *See, e. g., State v. Morales, supra; State v. Briley*, 106 Ariz. 397, 476 P.2d 852 (1970).

Reversal, however, is not necessitated by every limitation of cross-examination. *See, e. g., State v. Thompson*, 108 Ariz. 500, 502 P.2d 1319 (1972). Similarly, not every invocation of the Fifth Amendment requires the striking of a witness' testimony or a part thereof. *United States v. Cardillo*, 316 F.2d 606 (2d Cir. 1963), *cert. denied*, 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55. In determining whether a witness' refusal to answer impinges upon a defendant's Sixth Amendment right, courts look to

several factors. Precluded inquiry into collateral matters or cumulative matters involving general credibility does not necessitate the striking of a witness' testimony. *United States v. LaRiche*, 549 F.2d 1088 (6th Cir. 1977), *cert. denied*, 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383; *United States v. Gould*, 536 F.2d 216 (8th Cir. 1976); *United States v. Cardillo, supra*. Two types of precluded inquiry do, however, require the striking of a witness' direct testimony in whole or in part.[1] One is the refusal of a witness to respond to inquiry into matters elicited by the state on direct examination. *United States v. Gould, supra; United States v. Cardillo, supra; see United States v. Norman, supra*. The other is the refusal of a witness to respond to inquiry into matters tending to establish untruthfulness with respect to specific events of the crime charged. *United States v. LaRiche, supra; United States v. Cardillo, supra*.

█ The state claims that the foreclosed inquiry involved merely collateral matters, justifying the trial court's refusal to strike Adamson's direct testimony. We do not agree. Examination of the transcript of Adamson's testimony leads us to conclude that the preclusion of several questions operated to deny defendant his right to confrontation.

On direct examination, Adamson testified that he first discussed the proposed murders with Dunlap at a time when he went to fit a man named Don Aldridge for clothing. On cross-examination, he admitted that he had no license to do business in the retail selling of clothes, but invoked the Fifth Amendment when asked about the source of supply of the clothing. In the same vein, when Adamson was asked whether he had been engaged in the business of receiving stolen goods during the relevant time

frame, the court sustained the state's objection on the basis of materiality and relevance.

Additionally, Adamson testified that he had $8,000 under his control when he discussed legal fees for his potential defense in the Bolles murder with a lawyer after the murder. He stated that just under $6,000 was from Max Dunlap, but again claimed his Fifth Amendment right when asked to divulge the source of the remaining $2,000. Similarly, the defense could not question him regarding the source of his income for 1976, because he also refused to answer the question whether he had filed a federal or state income tax return for that year.

In *United States v. Cardillo, supra*, the Second Circuit Court of Appeals reversed a trial court for failure to strike the testimony of a witness in a situation similar to the instant one. The witness, whose testimony was critical, had refused to divulge the source of money he allegedly lent to the defendant to finance the purchase of the stolen goods involved in the case. The state claimed that the proposed cross-examination related merely to credibility. The Court held, however, that it did not involve the type of testimony that would have developed the general unsavory character of the witness, as might questions involving prior convictions. The questioning might have led to the demonstration of untruthfulness with respect to specific events of the crime charged.

We consider this reasoning applicable to Adamson's foreclosed testimony. The line of questioning concerning the source of clothing and the business of stolen goods might have led to evidence that there was no such source, or that there was none at the critical time. If so, Adamson's testimony as to his meeting with Dunlap at which

1. We need not decide the question whether Adamson's direct testimony should have been stricken in whole or stricken in part, since neither was accomplished. Should the need for such a judgment arise again, it is best left to the trial court's discretion. As the Court opined in *United States v. Cardillo, supra*: "[W]hether all or a part of the testimony should be stricken, must depend upon the discretion of the trial judge exercised in the light of the particular circumstances. Unsatisfactory as such a generality is for a trial judge who is required to give instantaneous rulings on close questions and who does not enjoy the luxury of reflective appellate deliberation, any set of specific dogmas would be even more unworkable." 316 F.2d 606 at 613.

the murder was first discussed would have been discredited. As the Court stated in *Cardillo, supra,* at 612–613:

> "Disclosure of a direct lie relating to the events testified to might have had far more influence on the court's ultimate decision than testimony merely establishing the unsavory character of the witness by admissions of prior crimes."

Had defense counsel been able to delve into the sources of the $2,000, he might have uncovered ties with individuals who the defense claimed were responsible for the murder. For example, Dunlap admitted delivering the $6,000 to Adamson, but claimed he did so as a favor to Phoenix attorney Neal Roberts. If Adamson had testified that Roberts had given him the $2,000, Dunlap's testimony would have been bolstered. Additionally, the above discussed inquiry involving the source of clothing and the business of stolen goods might also have led to disclosure of the sources of Adamson's funding.[2]

The precluded lines of inquiry involved subject matter either testified to on direct examination or potentially demonstrative of untruthfulness with respect to specific events of the crime charged. The defendant had a right to gain more complete disclosure about this subject matter on cross-examination. That he was prevented from so doing constitutes reversible error.

The defendant raises a number of additional issues, which we need not address, because we consider his confrontation challenge meritorious.

The judgments and sentences of the Superior Court are reversed and remanded.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.

---

2. We speculate as to the role that answers to the precluded questions might have played in the defense in order to analyze the nature of the foreclosed inquiry. *See United States v. Cardillo, supra.* To discourage undue reliance on the necessity for such speculation in the future, however, we note the following language in *Alford v. United States,* 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624, 628 (1931): "It is the essence of a fair trial that reasonable

latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. * * * To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial." (citations omitted.)