873 P.2d 657

**STATE of Arizona, Appellee,**

v.

**Jesus Benjamin VARELA, Appellant.**

**No. 1 CA–CR 91–0646.**

Court of Appeals of Arizona, Division 1, Department E.

Oct. 5, 1993.

Reconsideration Denied Nov. 17, 1993.

Review and Cross-Petition for Review Denied May 17, 1994.

Grant J. Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Div., and Jon G. Anderson, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Carol A. Carrigan, Deputy Public Defender, Phoenix, for appellant.

## OPINION

VOSS, Presiding Judge.

We hold in this opinion that a person who is neither a licensed psychologist nor medical doctor is not qualified as an expert witness for the admissibility of prior bad act evidence to show "emotional propensity" in a sex crimes case. However, we hold that the prior bad act evidence was otherwise properly admitted; therefore we affirm.

Jesus Benjamin Varela (defendant) was convicted by a jury of four counts of sexual exploitation of a minor, Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–3553 (1989), class 2 felonies, and two counts of solicitation of child molestation, A.R.S. sections 13–1002, –1410 (1989 and Supp.1992), class 3 felonies. Defendant was sentenced to eighteen and one-half years each on the exploitation charges and eleven and one-half years each on the solicitation charges. All sentences were ordered to run consecutively, as required by law. See A.R.S. § 13–604.01(J) (1989).

Defendant raises four issues on appeal:

(1) Whether the trial court erred in admitting evidence of a prior bad act for the purpose of showing "emotional propensity" to commit the crimes charged?

(2) Whether the trial court erred in permitting testimony concerning the theory of "Child Sexual Abuse Accommodations Syndrome"?

(3) Whether the trial court erred in permitting testimony concerning "paraphilia"?

(4) Whether the instruction given by the trial court defining reasonable doubt constitutes fundamental error?

## FACTS

Defendant sold ice cream from a vending truck. In early July, 1990, while selling ice cream at a park, defendant met two nine-year-old girls whom we will call R and Y. Defendant asked the girls to work with him on his truck for $5.00 per day. They agreed and worked with him for several afternoons.

The fourth day the girls worked for him, defendant took them to a pizza parlor for lunch. Afterward, he took them to a store, gave them each $5.00, and instructed them to buy white underwear for themselves. He then took the girls to his apartment. When they arrived at defendant's apartment, defendant locked the door and blocked it with stereo speakers. Defendant then requested that the girls allow him to photograph them in their new underwear. Defendant told the girls that if they did not cooperate a "gang would get them, and that they would kill them and their families."

The girls testified about the nature of the photographs taken by defendant. Some of the photographs showed the girls in their new panties with their legs spread. Defendant photographed R with her panties down to her ankles. In another, R held her "private" open. Y also was photographed with her clothes down to her ankles and legs spread. Defendant had Y photograph defendant with R sitting on his lap with his hand on her thigh by her "private." R then photographed Y and defendant similarly positioned. Defendant asked both girls if he could touch their "privates" and offered $50.00 to do so. The girls refused. Defendant exhausted his film supply and, at $5.00 per photo, paid each girl approximately $90.00. The defendant returned the girls to the park, where they were released.

The police were called that evening after the girls' mothers became aware of the money. The girls initially told their mothers other stories about how they obtained the money, but upon further questioning, both girls reported the facts set forth above. Defendant was arrested, and his apartment and vehicle were searched. The searches disclosed two cameras, empty film packages,

store bags, receipts, and girls' white underwear, but no photographs were found.

Defendant admitted the girls worked for him and that he took them to his apartment so he could change his clothes, but denied taking any photographs of the girls or engaging in any improper sexual conduct. He further testified that money was missing from his apartment, and he believed the girls stole it.

### DISCUSSION

By a pre-trial motion *in limine*, the state sought to introduce evidence that defendant had previously molested his stepdaughter. The state asserted that evidence of this alleged sexual misconduct was probative of defendant's intent and common scheme or plan and that it evidenced defendant's continuing "emotional propensity" toward sexually aberrant behavior.

At the propensity hearing on the motion, the state called Robert Emerick as an expert witness. At the time of the hearing, Emerick was the program director of the Phoenix Memorial Hospital sexuality and addictions programs. His education includes a Bachelor of Science degree in chemistry and psychology, a Masters degree in education, and pursuit of a doctoral degree in counseling and psychology. His prior experience included directing an agency that developed treatment programs for convicted, adult sex offenders and providing pre-disposition assessments to adult and juvenile probation departments. In addition, he was involved in training programs for various courts and enforcement and correctional agencies.

Emerick testified that he reviewed police reports regarding both the charged incident and the situation involving defendant's stepdaughter. It was his opinion that defendant had an emotional propensity to commit sexually aberrant acts. At the conclusion of his testimony, the court allowed the testimony of the stepdaughter. Concerning its relevancy, the court stated:

And I think that the State has demonstrated today that there is very substantial evidence to find that all of these alleged acts do share substantial common features and factors which demonstrate the relevancy of the prior alleged acts against [the victims].

### EXPERT MEDICAL TESTIMONY

■ Defendant first argues that the prior bad act testimony should not be received because Emerick's testimony was not "expert medical testimony" as required by *State v. Treadaway*, 116 Ariz. 163, 568 P.2d 1061 (1977). We agree as to Emerick.

Emerick was not qualified to present the reliable "expert medical testimony" necessary for the admission of prior sexual misconduct by defendant with his stepdaughter. In *State v. Bailey*, 166 Ariz. 116, 800 P.2d 982 (App.1990), we addressed the issue of whether expert testimony from a psychologist met the *Treadaway* standard. We held that a psychologist was qualified because sexual propensity is a "mental health question" and a psychologist is recognized as a "mental health expert." *Id.* at 117, 800 P.2d at 983. *See* Ariz.R.Crim.P. 11.3(b). Although Emerick has vast experience working with sexual abusers and their victims, there was no showing he is licensed or certified in either the medical or mental health areas.

In *Treadaway*, our supreme court observed that the relevancy of prior sexual acts involves "complicated questions of sexual deviancy in a sophisticated area of medical and scientific knowledge." 116 Ariz. at 167, 568 P.2d at 1065. The licensing and certification of doctors and psychologists ensures the training and experience necessary to practice appropriately in the medical and psychological fields. *See* 1991 Ariz.Sess.Laws 119 (purpose of the act licensing psychologists is to protect public from unqualified and incompetent practitioners).

In light of the supreme court's comments concerning the necessity of "expert medical testimony," we decline to find the expertise required to prove "emotional propensity" present in this case. Evidence that a witness has worked with child abusers and their victims, regardless of the length of that experience, is simply not sufficient to permit the witness to render an opinion on this complex subject without an appropriate showing of recognized training, study, and certification.

Emerick's expertise was insufficient to satisfy the *Treadaway* "expert medical testimony" standard.

### OTHER ACTS NEAR IN TIME AND SIMILAR

■ The state argues alternatively that even if the required medical testimony of "emotional propensity" was not properly provided, the evidence was nevertheless admissible for two independent reasons. First, the state asserts that evidence of defendant's misconduct with his stepdaughter is admissible for a purpose other than to prove character, and thus, is not violative of Rule 404(b), Arizona Rules of Evidence. Second, the state contends no expert testimony is required for the admission of the misconduct involving defendant's stepdaughter because the conduct is both sufficiently similar and near in time to the charged acts. *State v. McFarlin*, 110 Ariz. 225, 228, 517 P.2d 87, 90 (1973). Because we agree with the state's second point, we do not discuss the first.

■ This court will affirm the trial court's admission of prior act evidence if it is sustainable on any ground. *See State v. Robinson*, 153 Ariz. 191, 199, 735 P.2d 801, 809 (1987); *cf. State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984). A trial court's ruling on evidence will not be reversed absent a clear abuse of discretion. *State v. Stanley*, 156 Ariz. 492, 494, 753 P.2d 182, 184 (App.1988).

In *McFarlin*, the supreme court held that in crimes involving sexual deviancy, proof of "similar acts near in time to the offense charged" may be admitted as evidence of the accused's propensity to commit such acts. 110 Ariz. at 228, 517 P.2d at 90.

*Treadaway* qualified *McFarlin* by requiring expert medical testimony to establish the relevancy of bad acts which are remote in time and dissimilar. *Treadaway*, 116 Ariz. at 167, 568 P.2d at 1065. However, *Treadaway* did not displace *McFarlin*. "Reliable expert medical testimony is not always required before a prior act may be admitted pursuant to the emotional propensity exception." *State ex rel. LaSota v. Corcoran*, 119 Ariz. 573, 577, 583 P.2d 229, 233 (1978). In those cases

in which the prior bad act is similar and near in time, its admissibility is governed by *McFarlin* not *Treadaway*. *Id.*

■ The difference between *Treadaway* and *McFarlin* is clear. When a prior sexual act is near in time and reasonably similar, the act speaks for itself and provides the basis for the exercise of a judge's discretion in determining relevancy. However, with the passage of time or where the acts are dissimilar, the predictive value of the prior act diminishes and the need for the "expert medical testimony" of *Treadaway* applies.

Because we do not have remoteness or lack of similarity problems here, the failure of Emerick's testimony to satisfy the expert medical testimony requirement of *Treadaway* is not fatal to the admission of the testimony regarding defendant's stepdaughter.

In concluding that the prior bad acts and the instant offense were similar, the trial court was specific:

> The grooming was very similar, involved alleged acts of voyeurism, the common thread of the initiation being the undergarments, the voyeurism, the later viewing through the mirror, the photography, the touching or request to touch and then ultimately the threats that were used against each of the victims.

Our search of the record confirms the trial court's observations in the following particulars:

> 1. The stepdaughter was molested from age seven through thirteen.

Here, the victims were nine years old.

> 2. The defendant promised or gave gifts to his stepdaughter to facilitate exploitation.

Here, the defendant paid the two girls for each act, each picture.

> 3. Defendant asked his stepdaughter to pose in lingerie.

Here, the defendant had the girls purchase panties and pose in them.

> 4. With his stepdaughter, the defendant initially watched her touch herself. This ultimately escalated into inappropriate touching by the defendant.

Here, the defendant was a voyeur and took pictures; his requests to escalate his involvement to touching were rejected.

5. The defendant focused on his stepdaughter touching and manipulating herself.

Here, the defendant had the girls touch themselves and had one of the girls manipulate herself.

6. The defendant threatened that his stepdaughter would be killed by a hired gang if she did not cooperate or if she told anyone.

Here, the defendant told the girls that a gang would kill them and their families if the girls did not cooperate or told.

There is an abundance of evidence supporting the state's argument that the prior acts which involved the stepdaughter and the acts involved in the instant offenses are similar.

The second requirement of *McFarlin* is temporal proximity. Here, the defendant's activities leading to his conviction occurred on July 6, 1990. Defendant's stepdaughter testified that she was molested by defendant from age seven through age thirteen. The last molestation occurred in late December of 1988, when defendant forced his stepdaughter to physically manipulate herself while he watched through a hole in the wall to her bedroom.

The stepdaughter told her mother about defendant's actions and they left defendant. On April 10, 1989, just before the stepdaughter's fourteenth birthday, she received a letter from defendant demanding she meet him. Defendant's seven-page letter repeatedly threatened the stepdaughter if she did not meet him as ordered.

You will be followed at all times. And soon as they get a chance you will be killed, maybe you'll be poisoned, drowned, burned to death or maybe tortured or crippled. Imagine being unable to walk (in a wheelchair with an acid burned face) all because you refuse to meet with me....

After all, he continued, "It's not like you've never been with me before."

■ The letter was received by the stepdaughter fifteen months prior to the molestation and solicitation of the victims here. We believe that *Treadaway* does not require an actual sexual contact to be a prior bad act which indicates an emotional propensity. The occurrence only has to satisfy the requirement that the act reflect the "propensity" of the "accused ... to commit such perverted acts." *McFarlin*, 110 Ariz. at 228, 517 P.2d at 90. Defendant molested his stepdaughter continually for approximately seven years. When she and her mother finally left defendant, he wrote a letter demanding that she meet him. If she did not, defendant advised her that she would be tortured and killed. We believe this is clearly evidence which satisfies the emotional propensity test. The letter is physical evidence. Such evidence is possibly weightier than the victim's account of events because physical contact, by its very nature, is done out of the view of others, which often leads to a dispute as to what occurred. Here defendant's own handwriting reveals his aberrance. Because the letter was received fifteen months before the subject molestations and solicitations, and because of the continuous and protracted nature of the molestation of the stepdaughter, we do not believe that this occurrence is remote in time. Even if the letter was not an "act" authorized by *Treadaway*, the last actual contact with the stepdaughter occurred only eighteen months before the subject offenses. Standing alone, we believe that the defendant's continuous contact with his stepdaughter defeats the remoteness argument.

The molestations of the stepdaughter are both similar and near in time to the crimes for which the defendant stands convicted; therefore admissibility is governed by *McFarlin*, not *Treadaway*. The failure to provide reliable expert testimony on the emotional propensity issue is not fatal to the admissibility of the prior bad acts. They are sufficiently similar and near in time to provide their own relevance.

### CHILD SEXUAL ABUSE ACCOMMODATIONS SYNDROME

Defendant next argues that the court erred by allowing Emerick to testify at trial

concerning the Child Sexual Abuse Accommodations Syndrome ("CSAAS"). In particular, defendant argues: Emerick was not a qualified expert; the CSAAS was not a proper subject for expert testimony; a *Frye* [1] hearing was required; and the prejudicial effect of Emerick's testimony outweighed the probative value.

■ Our supreme court stated clearly that qualification as an expert is a discretionary call of the trial court. *State v. Chapple,* 135 Ariz. 281, 660 P.2d 1208 (1983). Rule 702, Arizona Rules of Evidence, only requires that the witness possess "specialized knowledge [which] will assist the trier of fact...." The trial court's ruling on expert testimony will not be disturbed on appeal absent a clear abuse of discretion. *Stanley,* 156 Ariz. at 494, 753 P.2d at 184.

■ In *State v. Lindsey,* 149 Ariz. 472, 473, 720 P.2d 73, 74 (1986), our supreme court reviewed the admission of expert testimony concerning "behavior patterns of victims of 'in-home incestuous-type molesting.'" The court affirmed the admission of such evidence and concluded:

> The trial judge has discretion to allow such expert testimony where it may assist the jury in deciding a contested issue, including issues pertaining to accuracy or credibility of a witness' recollection or testimony. [Citations omitted.] The trial judge may exercise this discretion where there is a reasonable basis to believe that the jury will benefit from the assistance of expert testimony that explains recognized principles of social or behavioral science which the jury may apply to determine issues in the case.

*Id.* "We cannot assume that the average juror is familiar with the behavioral characteristics of victims of child molesting. Knowledge of such characteristics may well aid the jury in weighing the testimony of the alleged child victim." *Id.* at 473–74, 720 P.2d at 74–75.

Although we concluded that Emerick was not a qualified medical expert pursuant to *Treadaway,* because of his extensive experience in working with sexual abusers and their victims, he qualifies as an expert under Rule 702 to testify about recognized general characteristics of child sexual abuse victims. We conclude that the trial court did not err in allowing Emerick to generally and objectively describe CSAAS.

■ Defendant's argument that a *Frye* test was required before allowing testimony concerning CSAAS also lacks merit. While Arizona follows *Frye* for certain types of evidence, not all expert testimony is subjected to a *Frye* analysis. *State v. Richards,* 166 Ariz. 576, 804 P.2d 109 (App.1990). Under *Frye,* the proponent of scientific evidence must show the evidence's reliability by showing it has gained general scientific acceptance and recognition. *Id.* at 577, 804 P.2d at 110.

We are not aware of any Arizona cases discussing a *Frye* requirement in a CSAAS context. California, however, ruled that a *Frye* analysis is not required for similar testimony. *See People v. Stoll,* 49 Cal.3d 1136, 265 Cal.Rptr. 111, 783 P.2d 698 (1989). In *Stoll,* defendants were convicted of lewd and lascivious conduct against young children. The California Supreme Court allowed a defense witness to describe psychological test results and an asserted "profile" before concluding that the defendant showed no signs of deviance. *Id.*

Declining to require the *Frye* test, the *Stoll* court concluded:

> The testimony and the matter upon which it is based also meet traditional standards for competent expert opinion, without need for additional screening procedures applicable to new, novel, or experimental "scientific" evidence not previously accepted in court. We conclude the trial court erred in using *Kelly* [2]/*Frye* to exclude the testimony....

*Id.* 265 Cal.Rptr. at 127, 783 P.2d at 714.

The conclusion of the California court applies here. The testimony concerning general characteristics of child sexual abuse victims is not "new, novel or experimental scientific evidence" and therefore does not require

---

1. *Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923).

2. *People v. Kelly,* 17 Cal.3d 24, 130 Cal.Rptr. 144, 549 P.2d 1240 (1976).

the additional screening provided by *Frye*. Again, the admission of expert testimony in this area is a discretionary call and we do not believe the trial court abused its discretion.

### PARAPHILIA

█ Defendant argues that the admission of Emerick's testimony concerning paraphilia was error. Emerick simply defined paraphilia and listed several examples such as voyeurism, fetishism, and pedophilia. Emerick was objective in his testimony and did not involve the facts of the case or defendant in his description. We believe this information from an individual with "specialized knowledge" would aid the jury in deciding an issue before it. Rule 702. We do not believe the trial court clearly abused its discretion by allowing Emerick's testimony concerning paraphilia.

### REASONABLE DOUBT

Defendant argues the court committed fundamental error by giving the jury the following definition of reasonable doubt:

> The term reasonable doubt means doubt based upon reason. This does not mean an imaginary or possible doubt. It is a doubt which may arise in your minds after a careful and impartial consideration of all the evidence or from the lack of evidence.

*See* Rudolph J. Gerber, *Recommended Arizona Jury Instructions—Criminal*, State Bar of Arizona, No. 5 (1989).

Defendant did not request a modification nor object to the instruction given by the trial court. Defendant's failure to object to the jury instruction waives any challenge on appeal absent fundamental error. Ariz. R.Crim.P. 21.3(c); *e.g., State v. Gendron*, 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991).

Two separate panels of this court analyzed an instruction identical to the one in issue. *State v. Duzan*, 176 Ariz. 463, 469, 862 P.2d 223, 229 (App.1993) (charge defining reasonable doubt does not constitute fundamental error); *but see, State v. Chavarria*, 145 Ariz. Adv.Rep. 61 (App. Aug. 1993) (definitional instruction is harmless error). We adopt the analysis of *Duzan*.

We find no error.

Affirmed.

LANKFORD, J., concurs.

GERBER, Judge, concurring.

I write specially because I reach the same conclusion as the majority on the "prior bad act" issue but for a different reason. The stepdaughter's testimony shows molestations almost continuously over an eight-year period prior to the acts charged here. Though these prior molestations go well beyond the three-year period in *Treadaway*, there really is no remoteness problem because essentially the same conduct spans the eight years up to the charged offenses. Apart from a short sojourn to Mexico, there never was a significant break in this pattern, which continued until the charged crimes occurred. Under this circumstance, no remoteness problem arises, no medical testimony was needed at all, and the entire span of prior acts was properly admitted. For similar facts, *see State v. Spence*, 146 Ariz. 142, 704 P.2d 272 (1985).

Secondly, while I concur in the "similarity" conclusion, I do not agree that the act of writing the threatening letter of April 10, 1989 is similar to any act of molestation. Nor, in my view, is that narrow analysis of similarity of specific acts required or even possible. Rather, in a broader view, the similarity consists in the defendant's common method of repeatedly using homicidal threats to induce his victims' submission.

While I concur completely with the majority's analysis that Emerick was unqualified, it needs be underscored that no medical expert was necessary at all because the prior acts were both similar and proximate (because of continuity) to the charged acts, thus obviating in principle the need for the *Treadaway* approach.