[Crim. No. 3139.   Second Appellate District, Division One.—December 15, 1938.]

THE PEOPLE, Respondent, v. RUDOLPH P. VILLEGAS, Appellant.

David C. Marcus for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

WHITE, J.—Appellant Villegas, and Charles A. Guerra were by information charged with two counts of robbery whereby they did by means of force and fear, etc., take from Gordon Gammans and Mrs. Ruth Bohanna certain described personal property. In each count it was further alleged that both at the time of the commission of each offense and at the time of their arrest the defendants were armed with a deadly weapon in the form of a 38-caliber revolver. Following trial before the court sitting without a jury, the defendants were convicted on both counts and the court further found that at the time of the commission of the offenses charged defendants were armed with a deadly weapon.

From the judgments pronounced against him and from the sentences imposed, as well as from the order denying his motion for a new trial, defendant Villegas alone prosecutes this appeal.

Evidence introduced at the trial showed that on the evening of March 20, 1938, the victim named in count I was in charge of a service station, when about 7:30 o'clock defendant Guerra walked into the premises and inquired concerning the name of a street. As the victim was examining a map to obtain the requested information, defendant Guerra addressed him, saying, "Open the cash register"; whereupon the victim looked around and saw Guerra with the gun, which he was holding at his side. The station attendant thereupon opened the cash register and defendant Guerra abstracted therefrom

certain personal property, including money in the amount of approximately sixteen dollars. Following this, defendant Guerra ran over to an automobile parked near by and drove away. The station attendant was uncertain as to whether there was any other person in the automobile; neither did he make any identification of appellant, Villegas.

The victim named in count II testified that she was waiting for a bus at a street intersection when an automobile came up and defendant Guerra, alighting therefrom, went around toward the rear of the automobile, then suddenly came back, pointed a gun at her and demanded her purse. This witness testified that she remonstrated with Guerra, asking him not to take her purse, as she worked for a living, needed her money and had no funds other than what were in her purse to enable her to get home; whereupon defendant Guerra snatched the purse out of her hand, got into the automobile and started away. This witness also testified that there was another young man driving the automobile, but she could not identify appellant Villegas, as being that person.

Charles R. White, a police officer, testified that about 11.:15 P. M. on the night of the robberies here in question he and another officer were sitting in a police automobile when another machine drove by. Becoming suspicious of the occupants of the latter car, the officers pursued it, and upon overtaking the same discovered the occupants thereof to be appellant and his codefendant, Guerra, the latter of whom was holding a loaded 38-caliber revolver in his hand, while appellant was driving. Certain personal property belonging to the victims of the robberies was also found in the automobile. In a conversation with the officers immediately following his apprehension, appellant Villegas said, "I will tell you what happened . . . yes, we held up two people, a service station in Hollywood and a woman some place in Hollywood". while defendant Guerra in the presence of appellant upon the same occasion said, "Yes, we got a guy in North Hollywood, a service station, and some woman ran away from us and screamed, and we got another woman in Hollywood". On the following day police officer Clendenning held a conversation with both defendants, when appellant was asked what part he took in the holdups, to which he replied that beyond driving the automobile he did not actively participate. At

this conversation appellant stated, however, that he received eleven dollars of the money so obtained from the victims of the crimes herein referred to.

■ Appellant first contends that the evidence was insufficient to support the decision of the court finding him guilty, this for the reason that he committed under coercion the acts upon which the robbery charged were based. In support of this defense appellant testified at the trial that his codefendant, Guerra, menaced him with the gun, threatened him, and that at all times he was in fear of great bodily harm being inflicted upon him by his codefendant.

The degree of evidence necessary to excuse one under the provisions of subdivision 8 of section 26 of the Penal Code from punishment for his criminal acts is thus defined in *People* v. *Sanders*, 82 Cal. App. 778, where, at page 785 [256 Pac. 251], the court says:

"In order for duress or fear produced by threats or menace to be a valid, legal excuse for doing anything, which otherwise would be criminal, the act must have been done under such threats or menaces as show that the life of the person threatened or menaced was in danger, or that there was reasonable cause to believe and actual belief that there was such danger. The danger must not be one of future violence, but of present and immediate violence at the time of the commission of the forbidden act. The danger of death at some future time in the absence of danger of death at the time of the commission of the offense will not excuse. A person who aids and assists in the commission of the crime, or who commits a crime, is not relieved from criminality on account of fears excited by threats or menaces unless the danger be to life, nor unless that danger be present and immediate."

We think there was enough testimony of appellant's guilt furnished by himself to give rise to a conflict in the evidence. There was nothing in the conduct of Guerra as exhibited toward appellant which gave the latter reasonable cause to believe that his life was in danger because of the belligerent attitude of his codefendant. The only threats which the record discloses are found in the following testimony of appellant himself with reference to the acts of his codefendant.

"Then he tells me that he stole some money from the fellow in the gasoline. I got mad and I tell him, 'Why, that is a

funny trick you are playing on me. It is going to be too bad for us'. Then he says to come, too. 'Come away,' he says, 'you are in it just about as much as I am, and we are going to do some more. You hear me?' And he pointed that gun at me.''

Before going into the gasoline station to perpetrate the first robbery, appellant Villegas testified that Guerra had said, ''Don't you dare go and leave me.'' After the perpetration of the first robbery, they went to a beer parlor, where they drank, and at which place, appellant testified, his codefendant ''bought some wine there and offered me some wine. I refused the wine and I took Seven-Up. And, of course, he started drinking a lot there. And I thought maybe he will get crazy or something and would shoot me up, or something. So I asked him, 'Let us go on; let us go home.' ''

The incident at the beer parlor occurred a considerable time before the second robbery was committed. After they left the beer parlor they drove back toward San Fernando, in connection with which trip appellant testified as follows:

''Q. Where did he have this gun?

''A. He had it right in his hand.

''Q. Were you afraid of him?

''A. Yes.''

But there is other evidence, and inferences, inconsistent with the testimony of appellant that he was in fear of his codefendant as above indicated. For instance, when, according to appellant, his codefendant before going into the service station to perpetrate the first robbery, said, ''Don't you dare go and leave me,'' appellant could have driven away, but instead he waited until Guerra returned, and drove the latter from the scene of the robbery. Again, following the first robbery, they drove to the beer parlor, where they consumed some drinks. Appellant was there afforded an opportunity to withdraw and leave his codefendant, but instead we find him remaining and driving Guerra away from there; and finally, when Guerra left the automobile to accost the victim in the second robbery, appellant again could have driven away; but on the contrary, we find him waiting at the wheel of the automobile with the motor running until Guerra accomplished his evil purpose, and then driving Guerra from the scene of the crime. Such conduct is not consistent with

innocence or apprehension that great bodily injury might be inflicted; but on the contrary, strongly fortifies the logic of a conclusion that appellant was a willing aider and abetter of his codefendant. That such was the case is amply established by the appellant's admissions both at the time of his arrest and on the following day.

Finally, appellant contends that the court erred in excluding the testimony of Mrs. Prudence Harding, called as a defense witness at the trial. During the examination of this witness, appellant attempted to qualify her as a psychologist and offered to prove by her that she had known appellant for some fourteen years, and that by reason of her study of psychology she was in a position to testify that appellant's will power was weak, that his physical condition was bad, and that he therefore was without sufficient force to "resist the impulse of this other boy to take him out on these robberies". The action of the trial court in sustaining an objection to this line of testimony was correct. It was both incompetent and immaterial, and she was entitled only to testify, as she was permitted under the court's ruling to do, concerning the general reputation of appellant in the community in which he lived for the traits involved in the offenses charged.

The appeal from the sentences is dismissed.

The judgments and the order by which the motion for a new trial was denied are, and each of them is, affirmed.

York, P. J., and Doran, J., concurred.