568 P.2d 1061
**STATE of Arizona, Appellee,**

v.

**Jonathan Charles TREADAWAY, Jr., Appellant.**

**No. 3116.**

Supreme Court of Arizona,
In Banc.

July 11, 1977.

Bruce E. Babbitt, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Stanley L. Patchell, John Pressley Todd, Asst. Attys. Gen., Grove M. Callison, former Asst. Atty. Gen., Phoenix, for appellee.

Lewis & Roca by John P. Frank, Mary M. Schroeder, Flynn, Kimerer, Thinnes, Derrick & Lindholm by John J. Flynn, Clark L. Derrick, Phoenix, for appellant.

GORDON, Justice:

Appellant, Jonathan Charles Treadaway, Jr., was convicted of sodomy in violation of A.R.S. § 13–651 and of first degree murder in violation of A.R.S. §§ 13–451, 13–452, and 13–453. After a sentencing hearing pursuant to A.R.S. § 13–454, appellant was sentenced to death and this appeal followed. We have jurisdiction under A.R.S. § 13–1711. The judgment of the trial court is reversed.

The facts necessary for this review are as follows: On the morning of August 30, 1974 the victim, a six-year-old boy, was found dead in his waterbed by his mother in the early morning hours. Sometime during the previous night entry had been made through the living room window but nothing had been taken from the house. An autopsy disclosed the cause of death was asphyxia. The autopsy also revealed evidence indicating the victim had been sodomized.

The State's case consisted of circumstantial evidence. The only usable prints lifted at the scene, two palm prints taken from the outside of the dead boy's locked bedroom window, were established as those of appellant. Pubic hairs found in the pubic and anal area of the victim's body were

compared with samples of pubic hair obtained from appellant. The samples taken from appellant were similar to those recovered from the body of the victim in that both shared the same unusual textural features. (A more sophisticated test, neutron activation analysis, could not be done, apparently because of problems with sample size.) The State also offered, for the purpose of showing emotional propensity, evidence that three years previously appellant had taken a 13 year-old-boy by the arm, undressed him and committed fellatio and anilingus upon him.

Appellant denied the charges against him. He admitted that he had looked into the windows of houses in the general neighborhood but said that he didn't remember the victim's house. He said he had not been at the victim's house on the night in question or anytime shortly before. This was controverted by testimony of the victim's mother that she had washed the front windows of the house the day before the murder, raising the inference that the palm prints found on the morning after the murder were fresh.

After the jury returned a verdict of guilty, the court held a sentencing hearing pursuant to A.R.S. § 13–454. The court found the existence of one of the statutorily prescribed aggravating circumstances—the "defendant did commit the offense in an especially heinous, cruel, or depraved manner,"—and the absence of any of the statutorily prescribed mitigating circumstances. Based on these findings the court sentenced appellant to death. The Court also sentenced appellant to a term of not less than twenty nor more than life imprisonment for the sodomy conviction. Notice of appeal was filed.

Thereafter, appellant's family retained a different attorney who made a motion to vacate judgment challenging the competence of the former counsel and his right to waive certain of his client's constitutional rights. The motion was denied; a notice of

appeal was filed and consolidated with the appeal from judgment and sentence.

The following issues were raised by appellant:

I. Did the trial court err by admitting evidence of appellant's prior bad acts?

II. Did the trial court err by refusing to allow the defense psychiatrist to testify about certain of appellant's character traits?

III. Did the trial court err in its treatment of the polygraph evidence?

IV. Was there sufficient evidence to support the verdict?

V. Was the death sentence improperly imposed?

VI. Was appellant's post-trial motion regarding competence of counsel erroneously denied?

I

Appellant argues that evidence of the acts which he committed on a 13-year-old boy three years before the crime charged does not fall within the emotional propensity exception to the exclusionary rule that evidence of other crimes is not admissible, and he argues admission of this evidence constitutes reversible error.[1] We agree that its admission here requires reversal.

In dealing with this issue we have said:

"The rationale in the exclusionary rule concerning evidence of other bad acts or crimes is the prejudice to the accused and the questionable relevancy of such evidence to the offense charged. The exceptions to the exclusionary rule are generally based on the strong relevancy of the evidence offered even though prejudicial to the defendant. II Wigmore on Evidence, 3rd Ed. § 216." *State v. McFarlin*, 110 Ariz. 225, 228, 517 P.2d 87, 90 (1973).

We adopted the emotional propensity exception stating:

"In those instances in which the offense charged involves the element of

---

1. Appellant pled guilty to a misdemeanor for this incident, and so it is not admissible for impeachment purposes as a felony conviction.

abnormal sex acts such as sodomy, child molesting, lewd and lascivious, etc., there is sufficient basis to accept proof of similar acts near in time to the offense charged as evidence of the accused's propensity to commit such perverted acts." *Id.*

2. A prior, separate sex offense (particularly a dissimilar one) with a different victim (possibly excepting a similar relationship between defendant and the victim, such as father-daughter) as remote as three years earlier is almost never admissible and especially not for the purpose of showing only defendant's propensity to commit the crime charged. *E. g., Parris v. State,* 43 Ala.App. 351, 190 So.2d 564 (1966) (admission, for purpose of showing identity, of prior acts with wife occurring within past several years, in trial for same offense with daughter, held reversible error because tended merely to show disposition, inclination or depravity); *State v. McFarlin,* supra, (admission, for purpose of showing emotional propensity, of prior acts with different victims occurring within a period shortly before and shortly after the offense charged, in trial for same offense, upheld); *State v. Finley,* 108 Ariz. 420, 501 P.2d 4 (1972) (admission, for purpose of showing system, plan or scheme, of prior similar acts with victim and other family members continuing over period of past five years until present, in trial for second degree rape and child molestation of adopted daughter, upheld); *State v. Van Winkle,* 106 Ariz. 481, 478 P.2d 105 (1970) (admission, for purpose of showing system, scheme or plan, of prior similar acts with victim and victim's sister continuing over a period of several years until eight months before act charged, in trial for second degree rape and lewd and lascivious conduct toward defendant's 14-year-old daughter, upheld); *People v. Cramer,* 67 Cal.2d 126, 60 Cal.Rptr. 230, 429 P.2d 582 (1967) (admission, for purpose of showing common design, plan or modus operandi, of prior act with another youth occurring during same time period as offense charged, in trial for the same acts with 13-year-old boy, upheld because of sufficient similarities in method); *People v. Honaker,* 205 Cal.App.2d 243, 22 Cal.Rptr. 829 (1962) (admit, for purpose of showing specific intent to arouse sexual desires in order to rebut defense of accident, and common plan, of prior acts with other minors occurring within one month of offense charged, in trial for similar molestation of minor child of the same age, upheld); *Harris v. State,* 183 So.2d 291 (Fla.App.1966) (admission of prior homosexual acts, in trial for similar acts with different victim, held reversible error because not relevant to any issue of material fact and sole effect was to show defendant's bad character and propensity to commit crime charged); *Davis v. State,* 115 Ga.App. 338, 154 S.E.2d 462

We found the evidence of other acts in *McFarlin* admissible because they met the requirements of sexual aberration, similarity and nearness in time.

Appellant argues the previous incident was neither similar nor near in time and the great weight of case law supports his view.[2]

(1967) (admission, for purpose of showing specific intent of prior act with different victim occurring two years earlier, in trial for same offense, held reversible error—same rule for sex or non-sex crimes); *State v. Wright,* 203 N.W.2d 247 (Iowa 1972) (admission of prior lascivious conduct toward own daughter, for purpose of showing complete story or for corroboration, in trial for statutory rape of stepdaughter held reversible error because shows only criminal character); *State v. Schlack,* 253 Iowa 113, 111 N.W.2d 289 (1961) (admission, for purpose of showing motive—gratify lust for young girls—and identity—similar circumstances and license number—of other similar acts with other young girls, in trial for same offense, held reversible error to admit evidence of act occurring five years earlier although act occurring four months earlier held properly admitted; error to admit either for purpose of showing intent); *Gorski v. State,* 1 Md.App. 200, 228 A.2d 835 (1967) (admission, for purpose of showing propensity to commit crime charged, of prior indecent exposure with different victims continuing up to present time, in trial for sodomy, held reversible error); *People v. Mooney,* 363 Mich. 454, 109 N.W.2d 845 (1961) (admission for purpose of showing propensity, of prior "lewd, homosexual parties," in trial for gross indecency with 16-year-old, held prejudicial, reversible error); *People v. Oaks,* 24 Mich.App. 7, 179 N.W.2d 688 (1970) (admission, for purpose of showing intent or scheme, of prior indecent liberties with same victim, in trial for same offense with 8-year-old daughter, held reversible error because irrelevant to those issues); *State v. Minns,* 80 N.M. 269, 454 P.2d 355 (Ct.App.1969) (admission, for purpose of showing lewd and lascivious disposition toward victim, of prior acts with same victim continuing from more than three years earlier until the present, in trial for similar acts, upheld); *In re S.,* 70 Misc.2d 320, 333 N.Y.S.2d 466 (Fam.Ct.1972) (admission of prior sodomy with different victims, in trial for sodomy, held reversible error for purpose of showing (1) common scheme/plan, or (2) intent, or (3) identification/peculiar modus operandi because method not so unusual and distinctive as to be like a signature, or (4) propensity because victims were different, or (5) corroboration); *State v. Gammons,* 258 N.C. 522, 128 S.E.2d 860 (1963), *overruled on other grounds, State v. Hunt,* 283 N.C. 617, 197 S.E.2d 513 (1973), (admission, for purpose of showing intent where intent is not at issue or for any other

The State, of course, argues the opposite and cites only one case actually on point for each. *Gilman v. State,* 258 Ind. 556, 282 N.E.2d 816 (1972) (similar); *Kerlin v. State,* 255 Ind. 420, 265 N.E.2d 22 (1970) (near in time). Both sides attempt to bolster their arguments with citations to opinions which often involve different exceptions (usually the common scheme, plan or design exception) or lack reasoned analysis (e. g., the State's two citations for similarity and nearness in time are both from the same court and the summary and cursory conclusions arrived at therein are unpersuasive). As we cautioned in *McFarlin,* the emotional propensity exception has been extended to questionable lengths and its application to all sex crimes has been sharply criticized.

The facts in this case are much more difficult than those in *McFarlin.* Remoteness in time is clearly a problem because a three year time lapse may leave the prior incident without predictive value. Similarity is also a problem because the acts themselves are different and may well involve different psychological and emotional dispositions. These factors are significant, particularly in light of the weight of case law, *supra,* and the lack of expert testimony relating to its relevancy, *infra.*

The admissibility of the prior act depends initially upon its relevancy, which involves complicated questions of sexual deviancy in a sophisticated area of medical and scientific knowledge. This Court is not prepared to resolve such questions in the absence of such expert knowledge. *Cf. Alires v. Southern Pacific Co.,* 93 Ariz. 97, 378 P.2d 913 (1963); *Carrizoza v. Zahn,* 21 Ariz.App. 94, 515 P.2d 1192 (1973). We are particularly reluctant when the evidence is of such a highly prejudicial nature that some jurists and commentators regard it as nearly dispositive, making the guilty verdict almost a formality. *E. g., Gilman v. State,* 258 Ind. 556, 282 N.E.2d 816 (1972) (dissenting opinion); Gregg, Other Acts of Sexual Misbehavior and Perversion as Evidence in Prose-

cutions for Sexual Offenses, 6 Ariz.L.Rev. 212 (1965).

In addition, statistical evidence generally indicates that, in relation to other classes of criminal offenses, sexual offenses as a group have a low rate of recidivism although a few sex offenses have a somewhat higher rate of recidivism than that of sex offenses in general. Gregg, supra, *citing* Best, Crime and the Criminal Law in the United States (1930); Report of Mayor's Special Committee for the Study of Sex Offenses (New York City 1941); State Department of Mental Hygiene, Report of Study of 102 Sex Offenders at Sing Sing Prison (New York State 1950); Ludwig, Control of the Sex Criminal, 25 St. John's L.Rev. (1951); Tappan, Some Myths About the Sex Offender, 19 Fed.Prob. 7 (1955). This information would indicate that evidence of prior similar acts may be less probative for sex crimes than for other kinds of crimes, and it supports the criticism of this exception.

Another problem with the emotional propensity exception has been its inconsistent application in trials involving sex offenses in Arizona. See, e. g., the discussion in *State v. McFarlin*, supra, of previous decisions; and see those earlier decisions.

■ Although we are reluctant to overturn the trial court, in light of the foregoing discussion we must hold the admission of this prior bad act in a trial involving this crime constitutes reversible error unless and until there is reliable expert medical testimony that such a prior act three years earlier tends to show a continuing emotional propensity to commit the act charged. Because there was no such expert testimony here, reversal is required.

Appellant argues further that the trial court erred in permitting the State to cross-examine him about the circumstances surrounding two burglaries. Because of the way in which this issue arose, we believe the question is unlikely to recur on retrial and we need not reach this issue.

purpose where only effect is to show propensity, of prior rape by threat of bodily harm on different victim occurring two years earlier, in

trial for assault with intent to rape, held reversible error).

## II

The defendant next contends that it was error for the trial court to sustain the state's objections to portions of the defense psychiatrist's testimony. The defense called Maier Tuchler, M.D., a local psychiatrist who had examined appellant. Dr. Tuchler chronicled his professional experience with homosexuals and answered questions about the nature of homosexuality, pedophilia and sadism.

In the course of his testimony, he stated his belief that homosexuals were no more likely to be sadistic than other persons. Defense counsel attempted to elicit from Dr. Tuchler the latter's opinion about whether appellant was capable of inflicting violence on anyone. In each instance the prosecutor's timely objections were sustained. Defense counsel attempted no offer of proof about the contested testimony.

■ Where the purpose and purport of the testimony expected to be elicited from a witness is obvious, we will review the matter on appeal even without an offer of proof. *State v. Kaiser*, 109 Ariz. 244, 508 P.2d 74 (1973); *Peterson v. Sundt*, 67 Ariz. 312, 195 P.2d 158 (1948). Dr. Tuchler was asked to testify whether in his opinion appellant was capable of inflicting grievous harm to anyone. A formal offer of proof was not necessary because there is no doubt what response Dr. Tuchler would have made to the defense counsel's questions.

The State made multiple objections to this testimony: immaterial, incompetent, irrelevant, calls for hearsay, invades the province of the jury and no proper foundation. It is unclear on what grounds the objection was sustained, but because the issue will probably arise on retrial we must briefly discuss it.

■ The expected testimony is clearly relevant and it is well-settled in Arizona that a medical doctor may testify as to his expert opinion although this opinion is based in part on what may be characterized as hearsay. *State v. McGill*, 101 Ariz. 320, 419 P.2d 499 (1966). From Dr. Tuchler's testimony as to his qualifications and as to the method by which he arrived at his medical diagnosis or opinion, there would appear to have been proper foundation.

It can be argued that the proposed testimony is no more than a witness' opinion about a trait of appellant's character rather than an expert medical opinion about personality. The rule in Arizona has been that opinion evidence is inadmissible as proof of character. By way of contrast, Rule 405[3] of the Federal Rules of Evidence allows opinion evidence as proof of character and no expertise is recognized in this area; anyone may give an opinion of a person's character.

In view of our reversal here and of the fact that this Court has already adopted new Rules of Evidence for Arizona, effective September 1, 1977, and that Rule 405 of the new rules would allow Dr. Tuchler's opinion, the trial court on remand should give consideration to this new rule in the event that retrial occurs before September 1, 1977.

## III

Appellant's third contention involves the proper role for polygraph examinations. Appellant retained three polygraph examiners, each of whom tested him. He argues the results of these tests should have been admitted as a matter of evidence and due process. He argues further that the police

---

**3.** Rule 405 of the Federal Rules of Evidence reads:

"METHODS OF PROVING CHARACTER

"(a) *Reputation or opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

"(b) *Specific instances of conduct.* In cases in which character or a trait of character of a person is an essential element of a charge, claim or defense, proof may also be made of specific instances of his conduct."

We have adopted this rule verbatim as Rule 405 of the new Arizona Rules of Evidence, effective September 1, 1977.

decision not to ask him to take a polygraph examination during the investigative stage of the case was a denial of equal protection of the law.

Conceding that polygraph evidence is inadmissible in Arizona except by stipulation, *State v. Goldsmith*, 112 Ariz. 399, 542 P.2d 1098 (1976), appellant urges us to join what he asserts to be a national movement toward admitting polygraph testimony without regard to stipulations. We do not believe the three cases cited by appellant—although two speak of improvements in equipment and techniques—constitute a national movement. Nor do we believe any of the three allow what appellant asks here: the option of introducing polygraph evidence after learning the results obtained by his own examiners.[4]

■ Furthermore, we believe the polygraph report of the Committee on Government Operations of the United States House of Representatives is persuasive concerning the insufficient reliability of polygraph technology.

"Although there is indication that efforts are being made to upgrade the training and educational requirements of polygraph operators, the committee finds that unproven technical validity of the polygraph devices themselves makes such efforts a meaningless exercise." Committee on Government Operations, The Use of Polygraphs and Similar Devices by Federal Agencies, H.R.Rep.No.795, 94th Cong., 2d Sess. 46 (1976).

For this reason we will retain our evidentiary rule that the results of a polygraph examination are admissible only by stipulation.

In arguing that the due process clause of the Fourteenth Amendment mandates admission of the polygraph evidence, appellant cites a New Mexico Court of Appeals decision, *State v. Dorsey*, 87 N.M. 323, 532 P.2d 912 affirmed on "slightly different grounds," 88 N.M. 184, 539 P.2d 204 (1975). The Court of Appeals in *Dorsey* cited *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), in holding polygraph evidence admissible. Since we disagree with New Mexico's evaluation of polygraph reliability, we believe polygraph evidence—unlike the testimony in *Chambers*—lacks "considerable reliability." Thus, the *Chambers* ruling which overturned the mechanistic application of an evidence rule to bar competent evidence is inapplicable here.

■ Appellant's final polygraph argument is based on the police decision not to ask him to take a polygraph examination during the investigatory stage of the case. Appellant submits that there had been "stipulation by conduct," that is, because police officers used a polygraph on another suspect in this case as well as in related investigations, they were obliged either to use it on him or to agree to admission of his test results. He also contends that by not asking him to submit to a polygraph examination the state suppressed evidence favorable to him thereby denying him due proces of law. The defendant concludes that not asking him to take a polygraph examination resulted in a denial of equal protection of the law.

---

4. In *United States v. Ridling*, 350 F.Supp. 90 (E.D.Mich.1972), the court said it would allow testimony from defense examiners only if the defendant first submitted to a further examination by a court-appointed examiner and if that examiner had an opinion on defendant's truthfulness in regard to material issues. We note that *Ridling* was a perjury case and so the polygraph testimony was directly relevant to the main issue, i. e., what the defendant believed to be true.

In *Commonwealth v. A Juvenile*, 365 Mass. 421, 313 N.E.2d 120 (1974), the court ruled that a defendant requesting a polygraph examination must bind himself in advance to the results of the test and that the trial court must use great care in deciding whether to admit such evidence.

The Supreme Court of New Mexico based its opinion in *State v. Dorsey*, 88 N.M. 184, 539 P.2d 204 (1975) on the recently enacted New Mexico Rules of Evidence and a stipulation by the parties that: (1) the polygraph operator was qualified, (2) the testing procedure was reliable and (3) the tests made on the subject were valid. The sole remaining issue, whether the results could be admitted over objection and without further stipulation, was decided in favor of the proponent of the evidence.

We find no merit in these arguments. It would be absurd for this Court to mandate that the police must use exactly the same investigative method on all suspects in all similar crimes, particularly an investigative technique of unproven reliability. Nor does a suspect have a right to this technique of unproved reliability.[5] Under these circumstances there is no "stipulation by conduct," no suppression of evidence, and no denial of equal protection. *State v. Rhodes*, 112 Ariz. 500, 543 P.2d 1129 (1976); cf. *State v. Knapp*, 114 Ariz. 531, 562 P.2d 704 (1977). *Compare Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) *with Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976).

## IV

In light of our reversal, we need not reach the remaining points of error raised by appellant.

For the foregoing reasons, the judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

CAMERON, C. J., and STRUCKMEYER, V. C. J., concur.

HOLOHAN, Justice, dissenting.

Although the case against the defendant was largely circumstantial, I am satisfied that the conviction is supported by substantial evidence and that there was no reversible error. I would affirm the conviction for first-degree murder and the sentence of death.

The majority reverses the case based on the admission of evidence of a prior unnatural sex act. The evidence admitted at trial shows that the defendant, approximately three years before this crime, accosted a 13-year-old boy, small for his age, who was delivering morning newspapers. The incident took place in the early morning hours while it was still dark. The defendant took the boy to a nearby yard, undressed him, and committed the acts described in the majority opinion. Under the rule announced in *State v. McFarlin*, 110 Ariz. 225, 517 P.2d 87 (1973), the test for admissibility of abnormal sex acts to show defendant's emotional propensity for such acts is that the acts must be similar and near in time.

Instead of answering the questions posed by the admission of this evidence, the majority slips quietly over to the psychiatrist's couch for an answer. The majority doesn't hold that the acts are not sufficiently similar to be admissible; the majority doesn't hold that the acts are not near in time. The majority refuses to resolve the question of admissibility without expert advice in this area "which involves complicated questions of sexual deviancy in a sophisticated area of medical and scientific knowledge."

The majority finds the decisions from other jurisdictions which support admissibility to be "summary and cursory," but the majority leaves the law of evidence on this issue in chaos. Will the admissibility of this evidence depend upon which expert the trial judge believes? In this very case there was a potential difference between experts on the defendant's emotional propensities. The trial judge, after hearing, did not accept the state's expert as qualified in the field. While the ruling was probably wrong because it was too restrictive, *State v. Macumber*, 112 Ariz. 569, 544 P.2d 1084 (1976), it was not important to the case until today's decision.

In my judgment the acts are sufficiently similar and near enough in time to show the defendant's propensity for abnormal sex acts with children. It is also noteworthy that the way the acts occurred supports the conclusion of similarity. The acts occur while the defendant is prowling around in the darkness of the early morning, occur with a male child, involve abnormal sex, and are accomplished with a certain boldness that ignores danger of discovery.

I believe that *State v. McFarlin, supra,* is still the law of this jurisdiction, and this

---

**5.** We hasten to add that there may be investigative techniques which raise a constitutional issue.

case is one of those aberrations which occur from time to time with "hard cases."

In another area the majority's position must be questioned. The defense expert, Dr. Tuchler, wanted to testify that the defendant was not a violent person. The trial judge correctly ruled that such testimony was not admissible. If the majority suggests that such character evidence is somehow admissible because it comes from some psychiatrist, I disagree. In fact the case cited by defendant disposes of that position. *Freeman v. State*, 486 P.2d 967 (Alaska 1971). Interestingly, this area of sexual deviancy which perplexes the majority is described as character evidence.

"It appears to be uniformly accepted that psychiatric evidence showing that an individual accused of sexually deviant misconduct is not a sexual psychopath should properly be regarded to be character evidence." *Freeman v. State, supra,* at 972 n. 3. *See also People v. Villegas,* 29 Cal. App.2d 658, 85 P.2d 480 (1938).

Prior to the adoption of the new rules of evidence the proper method of proving character was confined to showing general reputation. *Baumgartner v. State,* 20 Ariz. 157, 178 P. 30 (1919). The ruling of the trial judge was "clearly" correct under the law in effect at the time of the trial.

I agree with the majority that the new rules of evidence will permit Dr. Tuchler at a retrial to give his opinion on a trait of the defendant's character. On cross-examination can the state inquire of Dr. Tuchler whether he considered the sexual attack on the 13-year-old boy in forming his opinion of the peaceful nature of the defendant?

I concur in the majority's position on the use of the polygraph. Such tests are not admissible except by stipulation. I am not convinced that either machines or operators require recognition by the court as "reliable."

HAYS, J., concurs.