Filed 7/23/15  P. v. Graham CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CRAIG GRAHAM,<br><br>    Defendant and Appellant. | D066421<br><br><br><br>(Super. Ct. No. SCD250819) |

APPEAL from a judgment of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Jill Kent, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Kristen Kinnaird Chenelia and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

Craig Graham was convicted by a jury of one count of residential robbery (Pen. Code,[1] §§ 211, 212.5). The jury also found true allegations that Graham was vicariously armed with a firearm during the robbery (§ 12022, subd. (a)(1)), and that he tied, bound and confined the victim (§§ 1192.7, subd. (c), 1170.84).

The court granted Graham probation subject to 365 days in local custody.

Graham appeals contending the prosecution failed to prove he was not acting under duress at the time of the offense and that the prosecutor committed misconduct in comments during argument regarding the elements of the defense of duress.

We are satisfied there was virtually no evidence to support a claim of duress and thus we find substantial evidence supports the conviction. Our review of the record discloses no instance of prosecutorial misconduct. The jury was properly instructed on the elements of the defense of duress and the record clearly supports the jury's rejection of that defense.

## STATEMENT OF FACTS

The facts surrounding the offense are not seriously disputed. Therefore we will set forth only a brief summary of the facts of the crime in this case. To the extent there are any disputed areas we will address them in the discussion which follows.

The victim in this case, Robert Ferons, was a marijuana dealer, with whom Graham had done business in the past. Prior to the robbery in this case, Graham told Ferons he wanted to buy $500-$600 worth of marijuana from Ferons.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

2

Ferons and Graham made arrangements to meet in a public place to conduct the transaction, largely out of safety concerns by Ferons. On the day of the meet Graham was supposed to call when he got near the proposed meeting place. However, Graham came directly to Ferons's apartment accompanied by Gerard Coops, who was unknown to Ferons. The two entered the apartment through an open door without notice to Ferons.

Ferons took the two men into the kitchen to show them samples of the marijuana he had for sale. After about 10 minutes, Coops produced a .38 caliber revolver and pointed it at Ferons and said he was going to take all of the marijuana. When Coops produced the pistol, Graham said, "what are you doing?" in a mildly surprised tone. Graham told Ferons several times to comply with Coops's demands as Coops was "crazy." Coops told Ferons that he would "pop" him if he did not comply. Coops then took Ferons's wallet containing over $500.

Coops told Graham to search the apartment for more money or marijuana. Although Ferons apparently had substantial cash and more marijuana in a safe, Graham did not find it. He did return with a pillow case and some cord. The marijuana they did find was put into the pillow case and the cord was ultimately used by Graham to tie Ferons. After Ferons was tied, Coops and Graham again searched the apartment. Ultimately Graham and Coops left the apartment and got into Coops's car and drove away. The pistol was found in some bushes between the apartment and the location of the car.

3

DISCUSSION

Graham argues that there is not substantial evidence to support the jury's implied finding that he did not act under duress. Under the court's instruction, the prosecution was required to prove the absence of duress beyond a reasonable doubt. Graham argues the burden of proof was not met in this case. We disagree and find the record amply demonstrates the absence of duress.

Although he was certainly not required to testify, the absence of any statements from Graham regarding alleged duress complicates our review. There were no statements to police offered and no statements during the crime as heard by witnesses that would demonstrate that Graham acted in fear of an imminent threat of violence to himself or another.

Graham also argues the prosecutor committed misconduct in discussing the law regarding duress. We will discuss these issues separately.

I

*PROOF OF DURESS*

A. Legal Principles

When we review a claim of insufficient evidence to support a conviction, we review the entire record, drawing all reasonable inferences in favor of the decision. We do not make credibility decisions nor do we weigh the evidence. Our task is to determine whether there is sufficient substantial evidence from which a reasonable jury could find

the defendant guilty beyond a reasonable doubt.  (*People v. Johnson* (1980) 26 Cal.3d 557, 578; *People v. Guerra* (2006) 37 Cal.4th 1067, 1129.)

The defense of duress is available for all crimes except murder.  (§ 26; *People v. Anderson* (2002) 28 Cal.4th 767, 772-773.)  In order to demonstrate duress the evidence must show that the defendant's decision to act was in response to threats of imminent violence.  (*People v. Lo Cicero* (1969) 71 Cal.2d 1186, 1190.)  The proof must also show that the defendant believed his life would have been endangered if he refused and there was a demand that the defendant commit the criminal acts.  (*People v. Saavedra* (2007) 156 Cal.App.4th 561, 567.)  Graham does not challenge the trial court's jury instructions which defined duress and placed the burden of proof on the prosecution.[2]

In order to show duress in a case with two participants, merely establishing that one was in a leadership role is not sufficient.  (*People v. Viera* (2005) 35 Cal.4th 264, 290-291; *People v. Villegas* (1938) 29 Cal.App.2d 658, 662.)

### B.  Analysis

As we have noted, there is no direct testimony or statements that Coops threatened Graham before or during the robbery.  The closest to a possible threat cited by Graham is found in a dispute as to what Ferons told police.  Ferons testified that Graham said that he needed to cooperate or Coops would "pop" Ferons.  Ferons reported the threat to police.  One officer recorded the statement as a threat to "pop" Ferons.  A different officer recorded it as a threat to "pop" Graham.  Ferons was confronted with the inconsistency

---

[2]     CALCRIM No. 3402.

and maintained the threat was as to him. The jury was fully aware of that dispute. Other than the disputed "threat" there is no evidence that Coops ever threatened Graham.

Graham arrived at Ferons's apartment, unannounced, contrary to the plan, and he and Coops entered through an open door. Graham was the one who knew Ferons and brought Coops with him. Graham also left with Coops and they drove away in Coops's car, after they had dumped the firearm and the pillow case; hardly evidence of Graham acting under duress.

At trial, the principal focus of the duress defense was that Coops was the aggressor; that he produced the gun; he told Graham what to do and that according to one police report Ferons said Graham told him that Coops would "pop" Graham if Ferons did not cooperate. On appeal, Graham has shifted his focus substantially. He now points out that Graham could have acted under duress if he feared for the safety of another, specifically Ferons. Once again, there is no direct testimony to support such claim. However, we recognize there is evidence that Graham told Ferons to cooperate or Coops might injure Ferons. Of course there is nothing that demonstrates Graham had any relationship with Ferons such that Graham would be so concerned for Ferons's safety that Graham would participate in an armed robbery to protect Ferons. The jury could easily reject an inference of duress in this case.

It was Graham who brought Coops unannounced to the apartment. The crime here was robbery, which involves the taking of property from the person of another by force or fear. The jury could reasonably reject any inference of duress and conclude that

6

Graham's statements to Ferons were part and parcel of the effort of Graham and his cohort to get Ferons to give up his property. The fact that Coops was threatening is far more consistent with robbery than some unstated pressure on Graham to protect Ferons.

In short, there is substantial evidence to support the jury's rejection of the defense of duress. On this record the jury could reasonably find there was no credible evidence that Graham was acting to prevent harm to himself or to Ferons. Thus we reject Graham's challenge to the sufficiency of the evidence.

II

*PROSECUTORIAL MISCONDUCT*

Graham contends the prosecutor committed misconduct in argument to the jury by "misstating" the law regarding duress. We disagree.

At the outset, the People urge us to apply the doctrine of forfeiture because the defense did not raise any objections to the prosecutor's comments until after the case had been submitted to the jury. Predictably, Graham argues that if we apply forfeiture he was denied effective assistance of counsel. Since there is nothing in the record to show misconduct we will address the argument on the merits and avoid forfeiture.

The focus of the defense, as we have discussed, was on Graham's fear for his own safety, not about any concerns for Ferons's safety. There the lawyers disputed the impact of the possible statement that Coops would "pop" Graham. Thus it was a threat to kill Graham that principally supported the duress claim. The prosecutor said that Graham would have had to believe that Coops would "murder" him. Defense counsel, in

7

argument, disputed the use of the term" murder," but appeared to agree the threat of violence was in the term "pop." After the jury departed, defense counsel objected to the term murder. The trial court dismissed the distinction as meaningless since the clear import was a threat to kill. We will also reject the challenge to the term murder. Here the parties were not discussing the various forms of homicide or the differences between murder and manslaughter. Rather the term murder was being used in a commonsense, albeit dramatic way to express the threat in this case, if there had been one, to kill Graham. Clearly the term "pop" was understood in the context of a person pointing a loaded revolver as a threat to kill. As the United States Supreme Court said: "Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning . . . commonsense understanding of the instructions in the light of all that has taken place at trial [is] likely to prevail over technical hairsplitting." (*Boyde v. California* (1990) 494 U.S. 370, 380-381.)

The jury was properly instructed on the elements of the defense of duress. The dispute over the use of murder rather than kill fails to establish "a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner." (*People v. Frye* (1998) 18 Cal.4th 894, 970.)

In sum, Graham has failed to show any prosecutorial misconduct, thus the failure of counsel to timely object could not have conceivably caused him any prejudice.

DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.