NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RICHARD THOMAS HAMILTON, *Appellant.*

No. 1 CA-CR 18-0593
FILED 6-25-2020

Appeal from the Superior Court in Maricopa County
No.  CR 2016-158498-001
The Honorable Warren J. Granville, Judge (Retired)
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Counsel for Appellee*

DM Cantor, Phoenix
By Christine Whalin
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Lawrence F. Winthrop joined.

---

**B R O W N**, Judge:

**¶1**        Hamilton appeals his convictions and sentences for several sexual misconduct offenses.  He argues the trial court abused its discretion by (1) admitting evidence of remote and dissimilar other-acts evidence; (2) allowing the State to call an undisclosed expert witness; and (3) precluding a witness from testifying that Hamilton's prior convictions were reversed on appeal.  He raises other issues that we address in a separate opinion. Finding no abuse of discretion, we affirm.

**DISCUSSION**

**¶2**        Hamilton was indicted on two counts of sexual conduct with a minor and six counts of molestation of a child, committed against victims M.C. and A.C.  The trial court later granted the State's motion to dismiss two of the molestation counts.  At the conclusion of an 11-day trial, the jury found Hamilton guilty on the remaining counts and the court sentenced him to prison for two life terms, one for each count of sexual conduct with a minor, and 28 years on each count of child molestation.  This timely appeal followed.

### A.        Other-Acts Evidence

**¶3**        We review the trial court's ruling on the admissibility of evidence for abuse of discretion.  *State v. Vega*, 228 Ariz. 24, 26, ¶ 6 (App. 2011).  When a defendant is charged with a sexual offense, Arizona Rule of Evidence ("Rule") 404(c) allows a court to admit evidence that the defendant committed other crimes or acts if such evidence  is "relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." *See State v. Yonkman*, 233 Ariz. 369, 373, ¶ 11 (App. 2013).  Before admitting such evidence, the court must find (1) clear and convincing evidence that the defendant committed the other act, (2) "the commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an

aberrant sexual propensity to commit the [charged sexual offense]," and (3) "the evidentiary value of proof of the other act is not substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors listed in Rule 403." Ariz. R. Evid. 404(c)(1)(A)–(C); *State v. Aguilar*, 209 Ariz. 40, 49, ¶ 30 (2004). In making the Rule 403 determination, the court must consider, among other factors, the remoteness of the other acts, the similarity or dissimilarity of the other acts, the strength of the evidence that the defendant committed the other acts, the frequency of the other acts, the surrounding circumstances, relevant intervening events, other similarities or differences, and other relevant factors. Ariz. R. Evid. 404(c)(1)(C).

¶4　　　　Before trial, the State moved to admit evidence of Hamilton's other acts of aberrant sexual behavior under Rule 404(c). The State's motion focused on three other victims who had allegedly been sexually abused or molested by Hamilton years earlier. Hamilton did not file a response. The evidence outlined in the police reports and by the State in its motion, uncontroverted by Hamilton, includes the following with respect to the two victims in this case, and the three Rule 404(c) victims ("the 404(c) witnesses"), all of whom testified at trial.

¶5　　　　M.C. and A.C. visited their step-grandfather and grandmother (Hamilton and his wife, Brenda) after school and on weekends. Hamilton helped care for M.C. and her little sister, A.C., by taking them to the pool and teaching them karate in a martial arts classroom located in his garage. In November 2016, M.C. told her father that Hamilton had been touching her inappropriately. M.C.'s father reported the abuse to police and to child protective services. He later learned that Hamilton had also engaged in sexual behavior with A.C. At the time, M.C. was 11 years old and A.C. was 7 years old.

¶6　　　　M.C. was not allowed to lock the bathroom door while she showered at Hamilton's house, and he would frequently enter a room when M.C. or A.C. were changing. On one occasion, Hamilton told M.C. to go to his bed and remove her pants and underwear; he then penetrated her vagina with his fingers. In another instance, Hamilton took M.C. to his bed, gave her a sleep mask to cover her eyes, told her to "get naked" and touched her vagina. M.C. also described an incident where she was in Hamilton's garage when he came in and locked the door. After engaging in martial arts, he told her "right now" so she took off her pants and underwear, and he again used digital penetration. At a different time, Hamilton was sitting on a couch with M.C. when he covered her with a large sheet, moved her shorts and underwear out of the way, and touched her vagina

"everywhere." A.C. described two instances where Hamilton entered the bathroom as she was preparing to take a shower and fondled her vagina and buttocks.

¶7 With respect to the acts committed against the 404(c) witnesses, the State's motion and police reports described the following. H.H. met Hamilton through his karate program. In 1989, when she was 15 and Hamilton was 35, Hamilton called H.H. into his office to massage his neck. As she did so, he grabbed her by the waist, kissed her, and asked if she wanted to be his 15-year-old girlfriend. The next day, Hamilton had H.H. sit on his lap where he proceeded to "feel[] her up" and kiss her, and told her that, if she told anyone, he would "lose his job, his life, everything." Over the next few months, Hamilton began to insert his fingers into H.H.'s vagina to stretch her out for sexual intercourse. Later, Hamilton engaged in sexual intercourse with H.H. and continued to do so regularly for years. Hamilton eventually married H.H.; however, as she later explained at trial, the marriage was annulled.

¶8 R.H. started taking karate lessons from Hamilton when she was in the sixth grade. In the summer of 1992, when R.H. was 16 years old, Hamilton invited her to his apartment to cool down after a training session. Hamilton massaged R.H., removed her shirt, massaged her breasts, put his hand in her underwear, and massaged her vaginal area. Hamilton asked R.H. if she wanted to be his girlfriend, but she refused.

¶9 When R.P. was 7 years old, she began taking karate lessons from Hamilton at her church. During a practice when R.P. was 14 years old, Hamilton took her into a second room where he kissed her on the cheek. On another occasion while alone with R.P. during practice, Hamilton fondled her breasts and told her he had watched her grow up and there was a spark between them. While R.P. was staying at Hamilton's house, Hamilton came into the guest bedroom where R.P. was staying, took off her pants, and digitally penetrated her vagina. After engaging in similar conduct on multiple occasions, Hamilton said he needed to stretch her out. Hamilton eventually succeeded in having sexual intercourse with R.P.[1]

---

[1] In 1998, Hamilton was found guilty of one count of sexual abuse and six counts of sexual conduct with a minor in Maricopa County Superior Court No. CR1997-007744. R.P. was the victim. After this court reversed the convictions, H.H. and R.H. came forward with allegations against Hamilton. He pled guilty to three counts of attempted sexual conduct with

¶10        At the outset of the evidentiary hearing on the State's motion, the parties stipulated to the admission of the police reports and interviews of M.C. and A.C., and of the 404(c) witnesses. The State then presented testimony from Dr. Tina Garby, a forensic psychologist. She explained that she reviewed multiple records, including the police reports, the interviews, Hamilton's motion for early termination from probation, his psychosexual evaluation, and his records from the Arizona Department of Corrections.

¶11        Garby opined that Hamilton had an aberrant sexual interest in committing sexual acts against the victims in the present case. She described similarities between the past and current acts, including that Hamilton gained access to and groomed his victims from a young age through karate instruction; all the victims were female minors over whom he held a position of trust and authority; he used his fingers to touch or penetrate their vaginas; and he told them to keep the behavior a secret. Garby also noted the similarities in the progression of sexual behavior with the victims, beginning with kissing and touching of the breasts before moving to touching of the vagina or digital penetration. In the case of M.C., Garby testified about Hamilton's pattern of using his position as a karate instructor to start grooming her through accidental touching, like wrestling or gymnastics. Garby also explained that the digital penetration of M.C. was similar to the digital penetration Hamilton used to groom his past victims for sexual intercourse by stretching them and might have been part of his preparation had the behavior continued.

¶12        Garby de-emphasized the age differences between the past and current victims, explaining that most child molesters are not true pedophiles (i.e., having a sexual interest limited to children 13 years old or younger), but instead generally act on opportunities available to them. Garby explained the long gap between the past and current acts, noting that Hamilton was incarcerated until the end of 2003 and was on probation until 2009. During his probation he was not teaching karate, so his access to children was limited until his step-granddaughters reached an age in development that he became interested in them sexually.

a minor, committed against R.P. in Maricopa County Superior Court No. CR2000-003435-A ("the 2000 case"). The charges involving H.H. and R.P. were dismissed as part of the plea agreement. Hamilton was released from prison in 2003 and was discharged from lifetime probation in 2009 due to a change in the law, but continued to have a lifetime duty to register as a sex offender.

¶13          In a detailed ruling, the trial court admitted the proffered evidence, finding there were sufficient similarities in the prior acts to show that Hamilton had a character trait giving rise to an aberrant sexual propensity to commit the offenses charged, including the following:

> [U]sing karate teaching to build relationships with underage girls and to start the process of grooming them for sexual behavior; using digital penetration; telling the victims to keep the situation secret; using a position of trust to gain the confidence of the victims; and approaching victims in bathrooms or bedrooms when no other adults are present.

The court also found that the "evidentiary value of proof of the other acts is not substantially outweighed by a danger of unfair prejudice, confusion of issues, or other factors mentioned in Rule 403."[2]

¶14          Hamilton contends the trial court abused its discretion when it admitted the other-acts evidence under Rule 404(c). He does not dispute that clear and convincing evidence supports a finding that he committed the other acts against the 404(c) witnesses, or that the commission of those acts provides a reasonable basis to infer that he had a character trait giving rise to an aberrant sexual propensity to commit the charged crimes. Instead, he argues the court failed to consider several of the Rule 404(c)(1)(C) factors, including dissimilarities between the prior and present acts, the remoteness of the prior acts, and intervening events.

¶15          First, Hamilton contends the other acts are irrelevant because they are too dissimilar to the present acts. He points to the difference in the victims' ages, the difference in relationship in that the prior victims were his karate students, while M.C. and A.C. are his step-granddaughters, and the differences in the progression of touching. But acts "need not be perfectly similar in order for evidence of them to be admitted under Rule 404." *State v. Lehr*, 227 Ariz. 140, 147, ¶ 21 (2011). For example, in *State v. Weatherbee*, we upheld the trial court's finding that prior acts that occurred between 19 and 22 years before trial were admissible. 158 Ariz. 303, 304–05 (App. 1988). In the defendant's trial for sexual abuse of his 16 and 12-year-old daughters, we affirmed the admission of testimony from the defendant's adult daughters concerning abuse committed against them 19 years earlier when one of the daughters was 13 years old, and 20 to 22 years

---

2          After this ruling, a different judge presided over the remainder of the proceedings in the case.

earlier when the other daughter was 8 to 10 years old. *Id.* at 304. We reasoned that the remoteness of the acts was less concerning given the similarities between "the type of victim involved, the locale, the type of sex act and the exercise of parental authority by the accused over the victims." *Id.* at 305. We further accounted for the gap between the acts, explaining that the defendant had left his prior family and started a new one, so it was several years before his new daughters reached the age where they drew his interest. *Id.*

¶16 Although the ages of his victims in this case range from 7 to 16 years old, the facts establish that Hamilton was sexually interested in underage girls. As Garby testified, the differences in the victims' ages were due to the opportunities available to Hamilton. His step-granddaughters were the children Hamilton could easily associate with for the purpose of grooming for and engaging in sexual misconduct. And like the prior victims, Hamilton was their karate instructor. The progression of touching is also similar. Like the circumstances with H.H. and R.P., Hamilton began his sexual relationship with M.C. through digital penetration. Similar to R.H.'s situation, Hamilton started his sexual relationship with A.C. by fondling her and touching her vagina. The record reflects additional similarities, including that all the victims were female minors, and except for A.C., Hamilton used his role as karate instructor to groom and isolate them; and in each case he held a position of trust and authority. Garby also noted that the digital penetration Hamilton employed to prepare H.H. and R.P. for sexual intercourse was similar to the digital penetration he subjected M.C. to, indicating that he may have been grooming her for sexual intercourse had the progression continued.

¶17 Second, Hamilton argues the prior acts were irrelevant because they were too remote. While Hamilton began his sexual relationship with H.H. in 1989, 27 years before the present acts, he maintained an ongoing sexual relationship with her during which he also engaged in sexual behavior with R.H., only ending when he was imprisoned in 1998 for acts he committed against R.P. After being released from prison in 2003, he was on probation until 2009. As Garby testified, Hamilton's access to children was limited during this time, and he needed additional time until M.C. and A.C. were old enough to draw his interest. Therefore, the gap in time between the prior and present acts does not render the prior acts irrelevant. *See* Ariz. R. Evid. 404, 1997 cmt. ([Rule 404] "[d]oes not contemplate any bright line test of remoteness or similarity. . . ."); *see also Weatherbee*, 158 Ariz. at 304–05.

¶18        Third, Hamilton contends the trial court failed to consider substantial intervening events between the prior and current cases, specifically pointing to Hamilton suffering a traumatic brain injury, and his 2009 release from probation.  Hamilton ignores the detailed finding explicitly stating that the court considered relevant intervening events in making its Rule 404(c) determination.  Hamilton's counsel briefly referenced the alleged traumatic brain injury during oral arguments at the end of the evidentiary hearing, but cited no evidence supporting the allegation.  As to Hamilton's 2009 release from probation, Garby testified it was the lack of access to children while he was on probation that accounted for the gap between the prior and present cases.  It does not follow that Hamilton's propensity to commit the charged acts diminished after his release from probation.  Rather, his release led to the circumstances under which he was able to reoffend.

¶19        Finally, Hamilton cites *State v. Treadaway*, 116 Ariz. 163, 168 (1977), and *State v. Hopkins*, 177 Ariz. 161, 164 (App. 1993), for the proposition that admitting other act evidence in sex offense cases is reversible error unless there is "reliable expert medical testimony" that tends to "show a continuing emotional propensity to commit the crime charged."  He further argues that Garby's testimony lacked a sufficient medical basis to demonstrate that he exhibited an aberrant sexual propensity because she did not diagnose him.  *See Treadaway*, 116 Ariz. at 167.  However, "under Rule 404(c) . . . , expert testimony is no longer required to establish relevancy in all cases of dissimilar or remote acts." *State v. Arner*, 195 Ariz. 394, 396, ¶ 5 (App. 1999).  Rather, under the 1997 amendment, a court may "admit evidence of remote or dissimilar other acts providing there is a reasonable basis, by way of expert testimony or otherwise, to support relevancy." Ariz. R. Evid. 404(c), 1997 cmt. (internal citations omitted).  Moreover, "[a] medical or other expert who is testifying pursuant to Rule 404(c) is not required to state a diagnostic conclusion concerning any aberrant sexual propensity of the defendant so long as his or her testimony assists the trier of fact and there is other evidence which satisfies the requirements of subsection (1)(B*).*" *Id.*  The trial court did not abuse its discretion when it admitted the other-acts evidence.

### B.        State's Undisclosed Expert Witness

¶20        Hamilton argues the trial court abused its discretion in admitting rebuttal expert testimony from Garby because the State failed to provide timely notice of such testimony under the Arizona Rules of Criminal Procedure.  "The scope of disclosure required under Rule 15 . . . is a question of law that we review de novo, while we review the judge's

assessment of the adequacy of disclosure for an abuse of discretion." *State v. Roque*, 213 Ariz. 193, 205, ¶ 21 (2006), *abrogated by State v. Escalante-Orozco*, 241 Ariz. 254 (2017) (abrogated on other grounds) (internal citations omitted).

**¶21** Before trial, Hamilton provided notice of his possible defenses, including the affirmative defense of lack of sexual interest. However, at trial, Brenda (Hamilton's wife) testified that Hamilton was unable to have sexual intercourse due to "no sex drive." Hamilton, in turn, testified he "had no sexual desire whatsoever" and he was "asexual." The State then disclosed it would call Garby "to dispute whether or not a lack of sex drive means lack of a sexual interest, as well as acting upon that sexual interest." Hamilton responded that the State had not properly noticed Garby as a rebuttal witness. The State argued it was entitled to call her as a rebuttal witness because Hamilton's sexual-disfunction defense was not properly noticed. Hamilton countered that he had noticed his sexual-disfunction defense by disclosing his defense of lack of sexual interest. The State replied that, as an affirmative defense, it understood lack of sexual interest to mean that Hamilton would admit he touched M.C. and A.C., but that it was done without sexual motivation and was not of a sexual nature. Instead, Hamilton used his sexual-disfunction defense as evidence that the charged acts did not occur at all. The trial court ruled that it would permit Garby to testify, but that defense counsel would have the opportunity to interview her. Garby then testified that a sex drive is the urge to satisfy sexual needs, whereas sexual interest means a person is sexually interested in, regardless of whether they desire, sex. She explained that having a low sex drive neither changes one's sexual interest, nor prevents acting on that interest.

**¶22** A "defendant must provide written notice to the State specifying all defenses the defendant intends to assert at trial, including . . . impotency." Ariz. R. Crim. P. 15.2(b)(1). Upon receiving the defendant's noticed defenses, the State must disclose its rebuttal witnesses. Ariz. R. Crim. P. 15.1(h). "This rule has been interpreted as requiring the disclosure of only those witnesses called to rebut defenses noticed by the defendant . . . ." *State v. Sullivan*, 130 Ariz. 213, 216 (1981).

**¶23** "It is a defense to a prosecution . . . that the defendant was not motivated by a sexual interest." A.R.S. § 13-1407(E).[3] Section 13-1407(E) is

---

3 A.R.S. § 13-1407(E) has since been amended but was effective as stated here until August 2, 2018.

an affirmative defense that excuses otherwise criminal conduct by the defendant. *State v. Holle*, 240 Ariz. 300, 305, ¶ 25 (2016).

¶24        The State was not required to provide pretrial notice that it would call Garby as a rebuttal witness because Hamilton failed to properly notice his sexual-disfunction defense.  The first time the State was made aware of the sexual-disfunction defense was during Brenda's testimony, after which it asserted its intent to call Garby to rebut the defense.  Hamilton contends that his notice of a lack of sexual interest defense was also sufficient notice of his sexual-disfunction defense.  However, as the State correctly notes, lack of a sexual interest is an affirmative defense that excuses otherwise illegal conduct. *See id.*  Accordingly, claiming lack of a sexual interest would have been enough to notice a defense that Hamilton had touched M.C. and A.C. but the touching was not criminal in nature.  Instead, Hamilton used his sexual-disfunction defense to assert that he did not commit the charged acts at all.  The State could not reasonably be expected to have anticipated this defense from Hamilton's notice of lack of a sexual interest.  *See Sullivan*, 130 Ariz. at 216–17 ("[I]t is obviously unreasonable to require the State to list in advance of trial and prior to the presentation of the defendant's case the names of all potential rebuttal witnesses, since the prosecution can rarely anticipate what course the defense will pursue.").

¶25        Hamilton cites *Roque* for the proposition that the State may not notice an expert for one reason and then use the expert for a different purpose.  213 Ariz. at 206, ¶ 26.  In that case, our supreme court held that the prosecution was required to disclose the witnesses it planned to offer as rebuttal to the defendant's insanity defense, because the defense had been timely noticed.  *Id.* at 208–09, ¶ 40.  Because Hamilton did not timely notice his sexual-disfunction defense, *Roque* does not affect our analysis here.  The trial court did not abuse its discretion in admitting rebuttal expert testimony from Garby to Hamilton's unnoticed sexual-disfunction defense.

### C.        Preclusion of Testimony

¶26        Hamilton contends that the trial court abused its discretion when it precluded testimony from Brenda that his convictions in the previous cases were reversed on appeal before he plead guilty to charges he committed against R.P.  We review a trial court's ruling on the admissibility of evidence for abuse of discretion. *State v. Robinson*, 165 Ariz. 51, 56 (1990).  We view "the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial

effect." *State v. Harrison*, 195 Ariz. 28, 33 (App. 1998), *opinion approved of,* 195 Ariz. 1 (1999) (internal citations omitted).

**¶27**　　　In its motion in limine, the State moved to preclude defense witnesses from testifying that Hamilton was wrongfully convicted of the charges involving R.P. or that the convictions had been reversed on appeal. At trial, Brenda testified to Hamilton's good character and relationships with M.C. and A.C.  On cross-examination, the State sought to undermine Brenda's testimony by asking whether she was aware of Hamilton's past offenses.  To rehabilitate her credibility, defense counsel argued that Brenda should be allowed to explain that her belief that Hamilton had a character for truthfulness was based in part on his prior convictions being reversed on appeal before he plead guilty to the attempted crimes against R.P.  The trial court precluded testimony about the reversal because it would be confusing to the jury.

**¶28**　　　Evidence is relevant if (1) "it has any tendency to make a fact more or less probable than it would be without the evidence"; and (2) "the fact is of consequence in determining the action."  Ariz. R. Evid. 401.  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, *confusing the issues*, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Ariz. R. Evid. 403 (emphasis added).  "The trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice.  Thus, it has broad discretion in deciding the admissibility."  *Harrison*, 195 Ariz. at 33, ¶ 21.

**¶29**　　　Nothing in the record indicates that Brenda could have detailed the procedural history of this court's decision Hamilton's earlier convictions or explained the substantive reasons behind it.  Thus, her proposed testimony about reversal may have left the jury with the false impression that Hamilton was innocent of the prior offenses against R.P. Moreover, if the trial court had permitted Brenda to expound on the details of our decision, that evidence would have transformed the present trial into a trial to determine the facts and procedure of the previous trial, which are the types of issues Rule 403 was presumably intended to preclude. *See State v. Gibson*, 202 Ariz. 321, 324, ¶ 17 (2002) ("[T]he multiplicity of minor issues will be such that the jury will lose sight of the main issue, and the whole evidence will be only a mass of confused data from which it will be difficult to extract the kernel of controversy.") (citing 1 Joseph M. Livermore, Robert Bartels, & Anne Holt Hameroff, ARIZONA PRACTICE: LAW OF EVIDENCE § 403 at 82–83, 84–86 (4th ed. 2000) (footnotes omitted));

*Hudgins v. Sw. Airlines, Co.*, 221 Ariz. 472, 481, ¶ 13 (App. 2009) ("[W]e accord substantial discretion to the trial court in the Rule 403 weighing process."). Additional jury confusion likely would have resulted because this issue pertains only to R.P. The other two 404(c) witnesses, H.H. and R.H., were not victims to the crimes that were reversed on appeal.

¶30 Hamilton contends nonetheless that precluding Brenda from testifying about the prior reversal would not have confused the jury because his convictions would still have been noted in the record, and that preclusion created the impression that Brenda lacked credibility as a character witness because she was unaware of his past. There was no risk, however, that Brenda would appear unaware of Hamilton's prior offenses because she testified she knew about them. The court did not abuse its discretion in precluding testimony from Brenda that Hamilton's prior convictions had been reversed on appeal.

## CONCLUSION

¶31 We affirm Hamilton's convictions and sentences.

